STATE EX REL. SPARRENBERGER, RELATRIX, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 5,267.)

(Submitted March 1, 1923.  Decided March 22, 1923.)

[214 Pac. 85.]

*Supervisory   Control—Husband   and   Wife—Divorce—Courts of Equity—Power to Set Aside Decree Obtained by Fraud —Constructive Service—Jurisdiction.*

Judgment Obtained by Fraud—Courts of Equity—Power to Set Aside.
   1.   A judgment obtained through fraud will be set aside by a court of equity upon seasonable application, its power to grant such relief being inherent.
Divorce—Action *in Rem.*
   2.   A divorce proceeding is one *in rem,* the *res* being the marital status of plaintiff.
Same—Decree Secured by Fraud—Action to Set Aside—Constructive Service—Jurisdiction.
   3.   A husband obtained a decree of divorce by fraud, perpetrated by stating in his affidavit of service of summons by publication that his wife was a resident of Philadelphia, whereas he knew she was residing in New York, with the result that publication of summons was made in the former city, and the wife, being unaware of the pending action, made no appearance.  He then left the state, and after the expiration of one year the wife, learning of the decree, commenced an action in the court where the divorce had been granted, to set it aside.  Constructive service of summons was had upon defendant, who moved to vacate the service of summons on the ground that there being no *res* upon which the court could act, it did not acquire jurisdiction upon constructive service.  *Held,* on application for writ of supervisory control, that the judgment of the court dissolving the bonds of matrimony between the parties was a *res,* that the court acquired jurisdiction, and that its action in quashing service of summons was error.
Same—Action to Set Aside Decree Obtained by Fraud—Right of Nonresident Wife to Sue.
   4.   The nonresident wife of a husband who obtained a divorce from her by fraud was not required to establish a one year's residence within the state before she could bring an action to have the decree set aside.

Original application for Writ of Supervisory control directed against the District Court in and for the county of

_____

2.   Jurisdiction of the *res* in foreign divorce proceedings; domicile of wife as defendant, see note in 59 **L. R. A.** 162.

Power of court of equity to relieve against divorce decree obtained by fraud, see notes in 18 **Ann. Cas.** 1002; 30 **L. R. A.** 562, 787.

Custer and S. D. McKinnon, a judge thereof to annul an order vacating service of summons by publication. Writ issued.

*Mr. George W. Farr,* for Relatrix, submitted a brief, and argued the cause orally.

The sole question, presented by the motion to quash the service of summons, was whether service of summons can be made upon the nonresident defendant by publication, it being the contention of the defendant in said cause, Charles P. Sparrenberger, that the action brought against him by his wife to have set aside and annulled the decree of divorce which he had obtained against her, is *in personam,* and that in such an action, service of summons cannot be had by publication. The plaintiff, this relatrix, contends that the action to annul and set aside the decree of divorce is *in rem* and that service upon the defendant, her husband, can be had by publication.

The fraud complained of by the relatrix in the divorce case, is fraud in the procurement of the decree by which the relatrix was prevented from defending the action. (See exhaustive note to L. R. A. 1917B, pp. 447-450.)

The fraud complained of is a fraud whereby the court was given a colorable jurisdiction of the defendant's person where there was not real jurisdiction. (*Caswell* v. *Caswell,* 120 Ill. 377, 11 N. E. 342.) There is a distinction between the two classes of cases: Those cases where fraud occurs in giving jurisdiction and those cases where fraud is committed after jurisdiction has in fact attached. (*Edson* v. *Edson,* 108 Mass. 590, 11 Am. Rep. 393; note L. R. A. 1917B, pp. 409-512.)

A judgment, the primary purpose of which is to fix the status of individuals, is considered as a judgment *in rem.* (15 R. C. L., p. 640.) The gist of the defendant's action was to have determined the marital status of the parties, and to that extent it was an action *in rem,* and the judgment determining the marital status was likewise *in rem.* It is the

decree that is the *res* which it is sought to have set aside. The decree is something definite, distinct, tangible, something in being, in existence. Charles P. Sparrenberger is responsible for this *res* coming into existence. The suit is to determine the state or condition of the decree, that is the *res* itself. (22 Cyc. 1102.) That in determining the status of the decree of divorce the status of individuals is likewise involved makes the action no less one *in rem*.

That the action is in equity does not, we submit, change the situation. While the original jurisdiction of the chancery court was purely personal, equity now covers very many subjects not purely personal, such as mortgage foreclosure actions, suits to quiet title, and many other actions of like nature. (32 Cyc. 467.) Service of summons may be had in an equity action where there is a *res* to be adjudicated. Where the *res* is within the jurisdiction of the court, the court may then take jurisdiction of the parties for the purpose of establishing the status of the *res*.

That constructive service of summons may be had in suits affecting the personal status of parties is recognized by the leading case on the question of substituted service. (*Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565 [see, also, Rose's U. S. Notes]; *Everett* v. *Everett*, 47 N. Y. Supp. 994, 27 App. Div. 473.)

The case of *Moyer* v. *Koontz*, 103 Wis. 22, 74 Am. St. Rep. 837, 79 N. W. 50, is an authority in support of the contention of relatrix in this case, although the district judge seemed to think that the case was favorable to defendant's contention. The opinion first refers to the language of the Wisconsin statute authorizing service by publication upon a defendant against whom a cause of action appears to exist when the cause of action arose in Wisconsin and the court has jurisdiction of the subject of the action, which statute, as we understand, is not dissimilar to section 9117 of the Revised Codes of Montana of 1921. It then refers to the previous decision of that court in the case of *Johnson* v. *Coleman*,

33 Wis. 453, 91 Am. Dec. 193; the facts of which fit the facts of this case exactly. In the Wisconsin case, however, the court held against the plaintiff for the reason that the plaintiff's husband had died, and she was in fact at the time of the commencement of the action an unmarried woman, upon the theory that there was no question of status to act on. The proposition upon which the decision was made against the wife in that case, does not obtain in this. It is of interest to note, however, in this connection, that the authorities are not in harmony upon the question of the right of a surviving party to contest the validity of a divorce decree. The right is upheld in some cases. (See note to *McElrath* v. *Leitell,* 120 Minn. 380, 44 L. R. A. (n. s.) 505, 139 N. W. 708. To the same effect is the case of *Blair* v. *Blair,* 96 Kan. 757, 153 Pac. 544.

It is possible that the case of *Pullman* v. *Pullman,* 92 Wash. 120, 158 Pac. 746, may be cited by the respondents; but we submit that it is not authority by reason of the fact that the statute of Washington relative to those kind of cases in which service of summons by publication may be had is not the same as our own. The provisions of our statutes are made applicable "to all actions and proceedings in which personal service of summons is not required to be made in order to obtain relief, *etc.*" (Sec. 9117, Rev. Codes, 1921.) This section being general in its terms is broad enough to include all actions not strictly *in personam.* (*Silver Camp Mining Co.* v. *Dickert,* 31 Mont. 488, 3 Ann. Cas. 100, 67 L. R. A. 940, 78 Pac. 967.)

*Messrs. Loud & Leavitt,* for Respondents, submitted a brief; *Mr. Charles H. Loud* argued the cause orally.

The present action on account of the nonresidence of the parties must be regarded as a straight action in equity, and as such is governed by the rules of equity, notwithstanding, that in this state there is but one form of civil action for the enforcement or protection of private rights. This rule

is clearly announced in 1 Pomeroy's Equity Jurisprudence, 4th ed., vol. 1, sec. 354. One of the rules of equity is, that equity acts *in personam* and not *in rem.* (*Id.*, sec. 428, and cases cited; 16 Cyc. 118; 15 R. C. L., sec. 181; Story's Equity Jurisprudence, sec. 875.)

If the action to set aside a decree of divorce is an independent action *in personam,* then of course a judgment rendered upon substituted service would be void under the doctrine of *Penoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565 [see, also, Rose's U. S. Notes]. We understand the general accepted rule to be that: A person not domiciled in a state or country cannot be charged *in personam* by an adjudication there, unless he is personally served with notice or process within it, or voluntarily submits himself to the jurisdiction of its courts. (*De Meli* v. *De Meli,* 120 N. Y. 485, 17 Am. St. Rep. 652, 24 N. E. 996; *Day* v. *Goodwin,* 104 Iowa, 374, 65 Am. St. Rep. 465, 73 N. W. 864; *Hettrick* v. *Wilson,* 12 Ohio St. 136, 80 Am. Dec. 337; *Dwyer* v. *Nolan,* 40 Wash. 459, 5 Ann. Cas. 890, 1 L. R. A. (n. s.) 551, 82 Pac. 746; *Weer* v. *Bell* (Okl.), 174 Pac. 500; 23 Cyc. 103C; 15 R. C. L., sec. 151.)

If it be necessary in a proceeding of this kind that notice be given, then it follows that the action must be regarded as being *in personam* and not *in rem.*

The provisions of our statute (sec. 9117, Rev. Codes 1921) are not broad enough to cover the pending action so as to permit of substituted service by publication of summons within the rule last above announced. In some states statutes have been enacted in which are enumerated the character of the actions in which service can be obtained by publication but our statute is not so framed so that we are forced to follow the general rule relating to the subject. (*Pullman* v. *Pullman,* 92 Wash. 120, 158 Pac. 746; 10 R. C. L. 364; 21 Corpus Juris, par. 183; note 59 L. R. A. 142, 143.)

We are further supported in the conclusions that this action is *in personam* and that substituted service of the sum-

mons is insufficient to give the court jurisdiction by the fact that the legislature has given a party defendant who has been served by publication of summons a period of one year in which to move to reopen the judgment. (Sec. 9187, Rev. Codes 1921.) It might be claimed by virtue of this provision of this statute that the judgment (the *res*) is kept within the jurisdiction of the court for this period, but even so, at the expiration of the year the judgment becomes final and the court has lost jurisdiction over it. After the expiration of the year a party desiring to attack the judgment must bring an independent action in equity for this purpose. (*State ex rel. Thompson* v. *District Court,* 57 Mont. 432, 188 Pac. 902.) Since the action in equity if successful would set aside the decree of divorce and thereby affect the marital status of the parties we submit that the same requirements as to residence ought to be met as are necessary to commence an action for divorce. The *res* must be within the jurisdiction of the court or otherwise the action cannot be maintained. (*English* v. *Jenks,* 54 Mont. 295, 169 Pac. 727.)

Upon the oral argument in the court below as well as in the brief of relatrix it is urged that the decree of divorce is deemed to be within the jurisdiction of the court and constitutes the *res* for the suit in equity to vacate the decree. We have made a diligent search among the authorities and have been able to find but one case in support of that theory: *Everett* v. *Everett,* 47 N. Y. Supp. 994, 27 N. Y. App. Div. 473. Upon an examination of the opinion in this case it will be noted that the court does not cite a single authority in support of the decision. This decision is not based upon fundamental principles of jurisdiction but rather upon the argument of convenience or necessity which requires that the jurisdiction of the court obtained by substituted service of summons must be upheld or otherwise there is no relief obtainable, for the alleged wrong done. The argument *"ab inconvenienti"* as a general rule should have but little weight in interpreting statutory or constitutional provisions. (*Park*

v. *Candler,* 114 Ga. 466, 40 S. E. 523; *Butler* v. *Andrus,* 35
Mont. 575, 90 Pac. 785.) The question was decided by a
court of inferior jurisdiction, and after the case was later
tried upon its merits, a judgment was rendered in favor of
the wife, but upon appeal the case was reversed, and the
court ordered the complaint dismissed upon the merits
(*Everett* v. *Everett,* 180 N. Y. 452, 73 N. E. 231).

The courts in Iowa have held that a motion to set aside an
order of court rendered at a prior term cannot be sustained
nuless it appears that all persons interested in the cause have
had notice (*Keeney* v. *Lyon,* 21 Iowa, 277). The courts of
Indiana have held that a motion for relief from a judgment
is not a proceeding in which notice to the opposite party may
be given by publication (*Beck* v. *Koester,* 79 Ind. 135). The
courts of Missouri have likewise held that in an action to
reopen a judgment on the ground of fraud or mistake service
by publication will not give the court jurisdiction of the
person of the defendant. (*Fisher* v. *Evans,* 25 Mo. App.
582.) The same rule is announced in 9 R. C. L., section 265.

The same question as to acquiring jurisdiction over non-
residents by substituted service of summons was involved and
decided in support of our contention in the case of *Moyer* v.
*Koontz,* 103 Wis. 22, 74 Am. St. Rep. 837, 79 N. W. 50.
Counsel for relatrix claims this authority is in support of his
contention because of the fact that in the course of the deci-
sion it refers to the previous decision of that court in the
case of *Johnson* v. *Coleman,* 23 Wis. 453, 99 Am. Dec. 193,
which latter case he contends supports his theory. Counsel
is clearly in error in this contention as an examination of
these two cases will clearly disclose a dissimilarity in the
facts of the cases.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion
of the court.

According to allegations in the record, which, for the pur-
pose of this application, we must assume to be true, relatrix

and Charles P. Sparrenberger, hereinafter referred to as the wife and the husband, were married in 1902. Two children, now living, were born to them. The matrimonial domicile was in New York in 1910, at which time the husband deserted his wife and the children. He came to Montana, established a residence here and in 1916 began an action against his wife for divorce upon the ground of desertion. Summons having been returned by the sheriff, with return indorsed to the effect that the wife could not be found in Custer county or in the state of Montana, the husband made and filed an affidavit in the cause as a basis for its service by publication, in which he falsely and fraudulently recited that the wife last resided in the city of Philadelphia, Pennsylvania which was her last known postoffice address, the fact being that he well knew that his wife did not then reside, and had not at any time resided, in Philadelphia. He well knew his wife was then residing in the city of New York, knew her city address, and in fact, during the period of time when he was applying for a divorce in Custer county was communicating with his wife and their children. Upon the affidavit, publication of summons was made in accordance with the statute and a copy of the summons and a copy of the complaint in the action were mailed to the wife at the city of Philadelphia. She did not receive these papers nor did she have any knowledge of the publication. In due time the court heard the proofs in the action and entered a decree dissolving the bonds of matrimony theretofore existing between the husband and wife, restoring each "to the status of a single, unmarried person," according to the wording of the decree, which was dated in December, 1916. In 1918 the husband removed to North Dakota, where he has ever since resided. The wife did not learn of the decree of divorce until about the month of October, 1920.

The wife has at all times retained her residence in New York. In July, 1922, she commenced an action in the district court of Custer county for the purpose of setting aside and

annulling the decree. In her complaint she alleged the fore-going facts, among others. It is conceded that her complaint states facts sufficient to warrant the relief sought. Summons was placed in the hands of the sheriff but he returned it with his certificate that he was unable to find the husband in Custer county or in the state of Montana. Thereupon an affidavit for publication of summons was made and filed in behalf of the wife, in which it was recited that the husband resided outside of the state of Montana and in the town of Beach, North Dakota. Order of publication was made by the court, summons was published in a proper newspaper and was personally served on the defendant in the town of Beach. That the statute was complied with in form is not ques-tioned. The husband seasonably appeared specially in the cause for the purpose of moving the court to set aside and vacate the service of summons. Argument was had upon the motion, and the court after careful consideration sus-tained it and refused to proceed further. Thereupon the wife made application to this court for the issuance of a writ of supervisory control; the object being to annul the order of the district court of Custer county in quashing the sum-mons, and to procure an order directing the district court to proceed with the action.

Fraud being the arch enemy of equity, a judgment obtained **[1–3]** through fraud practiced in the very act of getting it will be set aside by a court of equity upon seasonable appli-cation. Indeed, the power of a court of equity to grant such relief is inherent. (*Clark* v. *Clark,* 64 Mont. 386, 210 Pac. 93; 15 R. C. L. 760, 762.) The conscience of the chancellor moves quickly to right the wrong when it is shown that through imposition practiced upon the court by a litigant an unfair advantage has been gained by him and thus it has been made an instrument of injustice. (15 R. C. L. 761; *Dowell* v. *Goodwin,* 22 R. I. 187, 84 Am. St. Rep. 842, 51 L. R. A. 873, 47 Atl. 693.) This is conceded by learned counsel for the husband, but his contention is that in the ab-

sence of personal service of summons upon the husband this action cannot be maintained because, neither party being now a *bona fide* resident of this state, the marital status of the parties "which constitutes the *res* of the action is not before the court." This is said upon the theory that this action is in equity, and as "Equity acts *in personam* and not *in rem*," and, as there is no *res* upon which to act, the court may not proceed upon merely constructive service, that giving no jurisdiction. Counsel's assertion is too restricted. The power of equity has been extended so as to permit it to act in certain cases which are strictly *in rem* (16 Cyc. 134), one of which is the action for divorce.

The matrimonial domicile of the parties never was in Montana. It was in New York, and as the husband deserted the wife there, he did not bring it with him to this state. (*Atherton* v. *Atherton*, 181 U. S. 155, 45 L. Ed. 794, 21 Sup. Ct. Rep. 544 [see, also, Rose's U. S. Notes]; *Haddock* v. *Haddock*, 201 U. S. 562, 5 Ann. Cas. 1, 50 L. Ed. 867, 26 Sup. Ct. Rep. 525.) But he established citizenship here and under the settled law that all governments possess inherent power over the marriage relation, its formation and its dissolution, as regards their own citizens, this state had the right to adjudicate upon his marital status. (*Maynard* v. *Hill*, 125 U. S. 190, 31 L. Ed. 654, 8 Sup. Ct. Rep. 723 [see, also, Rose's U. S. Notes]; *Haddock* v. *Haddock, supra; Parker* v. *Parker*, 222 Fed. 186, 137 C. C. A. 626.)

The divorce action which the husband commenced in Custer county was a proceeding *in rem* (Black on Judgments, 2d ed., sec. 803), the *res* being the marital status of the husband (*Ellison* v. *Martin*, 53 Mo. 575; *Haddock* v. *Haddock, supra*). The court had jurisdiction over the person of the husband who brought the action, and it had at least a colorable jurisdiction over the subject matter of the action. Through fraud and by perjury which smells to heaven the husband tricked the court into entering a decree severing the marital bonds

which bound husband and wife together. The fraud was upon the court as well as upon the wife.

That the court had jurisdiction to act upon the record before it is not questioned. The decree which the court gave the husband is fair upon its face; and while, under the doctrine of *Haddock* v. *Haddock,* in view of the fact that the matrimonial domicile of these litigants was in New York, the decree is not entitled to obligatory enforcement in the courts of a sister state by virtue of the full faith and credit clause of the Constitution, nevertheless it will be accorded full faith and credit by a great majority of the states upon the principle of state comity. (Mr. Justice Brown, in *Haddock* v. *Haddock, supra,* p. 624.)

By reason of the fraud practiced by the husband, the wife did not receive a copy of the complaint and summons in the action. Before she had any notice of the fact that a decree of divorce affecting her had been given by a Montana court, the husband had removed to North Dakota. When the action was filed, the sovereign state of Montana summoned her to come into its courts to defend an action brought against her. Oblivious as she was of the pendency of the action judgment went against her. Before she ascertained what had befallen the year went by in which she might have asked to set aside the judgment. (Sec. 9187, Rev. Codes 1921.) She was then forced to come into a court of equity. (*State ex rel. Thompson* v. *District Court,* 57 Mont. 432, 188 Pac. 902.) She came, in the language of that case, into a court which has full authority to afford her relief upon a proper showing, and is met with the argument that the *res* upon which the court acted is no longer within its jurisdiction. The husband, a fugitive from the matrimonial domicile, came into Montana, by fraud induced its courts to take jurisdiction of his marital status, and now flouts the jurisdiction he fraudulently invoked. An answer to this argument which satisfies the judgment and conscience of the court is that, when the husband came into Montana, became a citizen

here, and induced the court to inquire into and adjudicate upon his matrimonial status, the court then had jurisdiction of the *res,* to-wit, that status. Through the affirmative action of the husband there was created another *res,* of which our courts have jurisdiction; that is, the judgment of the court dissolving the bonds of matrimony between the husband and the wife. (*Everett* v. *Everett,* 22 App. Div. 473, 47 N. Y. Supp. 994; 32 Cyc. 468.) That decree is of record in the court. It is a vital thing which deprives the wife of her marital status in so far as Montana is concerned, and which may deprive her of that status in many other states of the Union. It is mere sophistry to say that thing—that *res*— which has so forceful an existence has no existence. To do so is to recognize a fiction, that the *res* does not exist, and, as observed by Mr. Justice Holmes in the *Haddock Case*: "Fiction always is a poor ground for changing substantial rights."

The plaintiff has come into a Montana court seeking redress for the wrong done her through its action. If she cannot obtain relief from this false judgment in Montana she cannot obtain it anywhere. "The cause of action arose in this state, for the fraud was committed here if anywhere. The record of the judgment is in this state, and must be canceled here, if it is to be canceled at all. Nowhere else can full and adequate relief be afforded, and the departure of the wrongdoer should not be allowed to defeat it. This jurisdiction cannot be denied without rendering the courts powerless to get rid of judgments which fugitives have procured from them by fraud." (*Everett* v. *Everett, supra.*)

This is not an argument *ab inconvenienti.* On the contrary, it presents the direct question whether a court whose wrongful action is induced by the fraud of one litigant is powerless to relieve the other, an innocent victim of its power. In *Edson* v. *Edson,* 108 Mass. 590, 11 Am. Rep. 393, it is said: "We believe it to be an established principle of jurisprudence that courts of justice have power, on due pro-

ceedings had, to set aside or vacate their judgments and
decrees, whenever it appears that an innocent party without
notice has been aggrieved by a judgment or decree obtained
against him without his knowledge, by the fraud of the other
party." (*Johnson* v. *Coleman*, 23 Wis. 453.)

In *Moyer* v. *Koontz*, 103 Wis. 22, 74 Am. St. Rep. 837, 79
N. W. · 50, commenting upon the *Johnson Case*, the court
said: "Under the rule   *   *   *   there would seem to be no
doubt that a wife might bring suit in our courts to annul
a decree of divorce there entered, and confer jurisdiction by
substituted service, in accordance with our statutes therefor;
but it would be for the reason that the purpose of the suit
was to adjudicate and act upon her status in relation to
her absent husband, just the same as if she was suing for
divorce." The words "just the same as if she were suing
for divorce," we think, were used with reference to the wife's
status in relation to her absent husband only, and do not
imply that the wife must have had all the residential qualifi-
cations required of one suing for a divorce in order to seek
relief from the fraudulent judgment, as counsel suggest.

Based upon the words last quoted, counsel for the husband
[4] here argue that the wife might maintain this action, if
she were to come to Montana and gain a residence here.
Such a requirement would appear to be futile. Before one
may commence an action for divorce in this state he must
have been a resident here for one year next preceding the
commencement of the action. But we do not know of any
other case wherein a like residence is required before one
may appeal to our courts for relief. But here the wife is
not seeking to dissolve the marital status; she is asking to
maintain it. She is not seeking to change her actual status,
for, the divorce being void in fact, her status has not in truth
been changed. She simply asks the court to declare as a fact
what in truth exists, but which a· record, fair upon its face,
but false in fact, denies—the marriage. And when the court
strikes from the record that which fraud placed there, that
object will have been attained. Where one, a citizen, invokes

the jurisdiction of the court to adjudicate upon his status and by fraud induces it to enter a decree to the injury of another, the court having jurisdiction over the subject matter in the first instance will assert the authority of maintaining jurisdiction over it in order to right the wrong done. The wife has come voluntarily into the courts of this state, has submitted herself to the jurisdiction of the court of Custer county in the action which she has brought, and must necessarily abide the result of what the court does in that action. She is attacking the thing which is vital to her status as a married woman in this and possibly in other states, and it will not do to say that there is no *res* upon which the court can act. The judgment being the *res*, the district court of Custer county has as much jurisdiction and power to proceed as it had when, at the application of the husband, it in form dissolved the matrimonial status upon constructive service. Any other conclusion would sacrifice substance for form, fact for fiction, permitting fraud to prevent the administration of public justice. The law respects form less than substance (sec. 8757, Rev. Codes 1921), and for every wrong there is a remedy (sec. 8752, Rev. Codes 1921).

In the language of Lord Chief Baron Pollock in *Rogers* v. *Hadley*: "Fraud cuts down everything. The law sets itself against fraud to the extent of breaking through almost every rule, sacrificing every maxim, getting rid of every ground of opposition. The law so abhors fraud that it will not allow technical difficulties of any kind to interfere to prevent the success of justice, right and truth." (Variously reported in 9 Law Times Reports, 292, 9 Jurist, 898, 32 L. J. Exch. 248.)

We compliment respective counsel for the learning, ability and fairness they have displayed in presenting this cause.

Let the writ issue.

*Writ issued.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.