## Carey v. Carey

*M. J. Maggio*, for petitioner; *Charles F. Greevy*, for libellant.

LARRABEE, J., October 4, 1934.—Florence M. Carey, respondent in the above-entitled case, presented her petition to this court September 9, 1933, for a rule on the said libellant, John Carey, to show cause why the decree in divorce a. v. m. entered in the Court of Common Pleas of Lycoming County on February 20, 1928, should not be set aside and declared null and void. A rule was granted, returnable October 23, 1933, and hearing on the same was adjourned to a later date.

It appears that the said John Carey filed his libel for divorce in this court on May 14, 1927, averring that he was a resident of the City of Williamsport, Lycoming County, Pa., and giving his address as No. 770 West Fourth Street, and further averring that he had resided in the State of Pennsylvania since March 2, 1926, more than 1 year prior to the date of filing of said libel. A subpœna in divorce was duly awarded, and the sheriff made return that respondent could not be found in the County of Lycoming or State of Pennsylvania. An alias subpœna was issued, and similar return made. This was followed by an order of publication in the usual form, commanding respondent to appear. In due season a master was appointed, hearing was had, and the master filed his report recommending a decree of divorce a. v. m., which was confirmed absolutely by this court on February 20, 1928.

In his said libel, Carey averred that he was married to the said Florence M. Carey on September 8, 1914, in the City of Rochester, N. Y., following which they made their residence in the City of Buffalo, N. Y., and alleged that on or

about April 15, 1921, respondent deserted him, without reasonable cause, and that desertion had been continued in down to the date of the filing of the libel. He further averred that the last known address of respondent was in New York City.

In her said petition, Florence M. Carey represents that the said John Carey never had a legal residence at No. 770 West Fourth Street, City of Williamsport, aforesaid, nor did he reside within the State of Pennsylvania for one whole year prior to the filing of said libel; and, further, that the said John Carey had continued to reside in the City of Buffalo, N. Y. Petitioner alleges that the libellant knew her address at the time he filed his said libel and denies that she ever deserted libellant or that her residence was in New York City. The said Florence M. Carey contends that she did not learn of the above decree of divorce having been entered in favor of her husband against her, in the courts of this county, until shortly before she presented her petition to set aside said decree in these proceedings.

The petitioner recites that she caused a certified copy of the above-mentioned rule to show cause to be served on the said John Carey, in person, at his place of business, No. 533 Amhurst Avenue, Buffalo, N. Y., on September 23, 1933, by delivering to him a true copy of said rule, together with a copy of her said petition, duly verified, and that affidavit of this service was made by one Louis L. Bucciarelli, an attorney at law of the State of New York.

It is not denied that, since the granting of the said decree of divorce to him by this court, the said John Carey has resided in the City of Buffalo, N. Y., where he now resides.

On September 12, 1934, counsel entered a qualified appearance for John Carey, in which they appeared solely for the purpose of raising the question of jurisdiction, and on September 22, 1934, presented a petition wherein, in compliance with the procedure outlined in the Act of March 5, 1925, P. L. 23, it is alleged that proper service of notice of said rule to show cause had not been made on him, and that by reason thereof this court had no jurisdiction in the matter, and prayed the court that a rule might issue on the said Florence M. Carey to show cause why these proceedings should not be dismissed for want of jurisdiction. On the same date, this court granted a rule upon Florence M. Carey to show cause why these proceedings instituted by her to have the said divorce decree set aside should not be dismissed for want of jurisdiction. A hearing and argument was had on said rule.

Since the granting of said decree of divorce, herein complained of, an event has occurred which might otherwise have had some bearing on the question of service on John Carey of this notice of rule to show cause, to wit, the local counsel who represented libellant in obtaining said divorce decree, and upon whom, had he lived, personal service might have been had, died before these proceedings were instituted to set aside that decree.

If we assume, for the purpose of passing on this rule, the allegations contained in the petition of Florence M. Carey to be true, and find that the said John Carey practiced a fraud upon this court as well as upon his wife, in obtaining the said decree of divorce, and that he was never a bona fide resident of Pennsylvania, can he then enjoy the fruits of his fraudulent action undisturbed, by challenging the jurisdiction of this court by reason of his non-residence and thus deny the right of the court to vacate the decree obtained by his fraudulent practice?

In passing on this question of jurisdiction, the inquiry narrows down to this:

Was the actual notice of said rule given to John Carey, in person, a valid and sufficient service of notice for the purpose of giving this court jurisdiction of said John Carey as well as of the subject matter?

In Pennsylvania, we have no statute providing for service of a notice of rule to show cause on a nonresident; service of process on nonresidents being limited to the giving of notice by publication in instituting divorce proceedings, this leaves as the only alternative by which the respondent John Carey may be given notice of this petition and rule that of "actual notice".

The said Carey does not dispute that such actual notice was given him, as alleged, and that it was given to him at the hands of a member of the Bar of New York State, who has voluntarily come into this court to testify as to the manner in which service of notice of the rule was made.

No decisions were cited by counsel which bear on the question of what constitutes proper and sufficient service of notice of a rule on a nonresident, and whether personal service on him is necessary to give this court jurisdiction, and, after an exhaustive search, the court is unable to find any Pennsylvania decision where this question was raised under similar conditions. However, the court did find decisions in the Federal courts, as well as in the courts of New York, Wisconsin, Missouri, and Montana, where this very question was passed upon.

Counsel for respondent, in his argument, alleged that this proceeding to vacate said decree was an action in personam, in which nothing less than personal service would suffice properly to bring the respondent into this court. In answer to this, the court is of the opinion that the proceedings had in this court in said divorce action, and the court's judgment thereon in entering said decree, constitutes a proceeding in the nature of an action in rem, the res being the marital status of the husband, in which personal service on said respondent, John Carey, is not a vital requisite to bring him within this jurisdiction. In support of this conclusion we cite the decisions in Haddock v. Haddock, 201 U. S. 562, Pennoyer v. Neff, 95 U. S. 714, Cates v. Cates, 202 Mo. App. 352, 216 S. W. 573, State, ex rel., v. District Court et al., 66 Mont. 496, 214 Pac. 85, 33 A. L. R. 464, Everett v. Everett, 22 App. Div. 473, 47 N. Y. Supp, 994, and Johnson v. Coleman, Admr., et al., 23 Wis. 452, 99 Am. Dec. 193.

In Haddock v. Haddock, supra, the Supreme Court of the United States recognized this principle in its statement, to wit (p. 569):

". . . in consequence of the authority which government possesses over things within its borders there is jurisdiction in a court of a State by a proceeding *in rem*, after the giving of reasonable opportunity to the owner to defend, to affect things within the jurisdiction of the court, even although jurisdiction is not directly acquired over the person of the owner of the thing."

In the above-cited case of Haddock v. Haddock, the marriage took place in the State of New York, where the wife continued to remain after she had been abandoned by her husband, who had removed to the State of Connecticut, and it was said by the Supreme Court of the United States in that opinion (p. 577):

"If the marriage relation be treated as the *res*, it follows that it was divisible, and therefore there was a *res* in the State of New York and one in the State of Connecticut."

In Everett v. Everett, 22 App. Div. 473, 47 N. Y. Supp. 994, a case involving a similar situation, where the question raised was identical with that raised in the instant case and where respondent appeared specially only to move to vacate order for publication of summons, the court said:

"I think that a judgment rendered and duly entered in this State annulling a marriage is to be deemed a *res* remaining within the jurisdiction, to this extent at least, that the court retains over it the power to entertain a suit at the instance of the wronged party to set it aside on the ground of fraud, in which suit constructive service of process may be made upon the wrongdoer, if a non-resident, in such manner as the State, through the Legislature, may see fit to authorize, provided it is reasonably adapted to give the defendant actual notice of the proceeding."

In the case of State, ex rel., v. District Court et al., supra, the same circumstances arose as are alleged in the case at bar, to wit, the husband, whose domicile was in New York State, where he had been married and where he deserted his wife and children, removed to Montana, established a residence there, and obtained a decree of divorce. In doing so, he intentionally misrepresented the wife's place of residence, and service was had upon her by publication. Subsequently, the wife came to Montana and in a separate action moved to vacate said decree thus fraudulently obtained. In the meantime, the husband had removed to the State of North Dakota, and an order of publication was made by the Montana court, and summons was published in a proper newspaper and was personally served on defendant at his new place of residence in North Dakota, in compliance with the provisions of a Montana statute. In that case, the husband appeared specially only for the purpose of moving the court to vacate the service of summons, and contended that, in the absence of personal service of summons upon the respondent, the action would not be maintained because, neither party being a bona fide resident of Montana, the marital status of the parties which constitutes the res of the action was not before the court, and further that, as that was a proceeding in equity, equity acted in personam only and not in rem. The appellate court of Montana held that the lower court had jurisdiction of the matter and said, inter alia (pp. 505-509) :

"The divorce action which the respondent commenced in Custer county [Montana] was a proceeding *in rem* (Black on Judgments, 2d ed., sec. 803), the *res* being the marital status of the husband*(Ellison* v. *Martin*, 53 Mo. 575; *Haddock* v. *Haddock, supra)*. The court had jurisdiction over the person of the husband who brought the action, and it had at least a colorable jurisdiction over the subject matter of the action. Through fraud and by perjury which smells to heaven the husband tricked the court into entering a decree severing the marital bonds which bound husband and wife together. The fraud was upon the court as well as upon the wife.

"That the court had jurisdiction to act upon the record before it is not questioned. . . .

". . . She [the wife] came . . . into a court which has full authority to afford her relief upon a proper showing, and is met with the argument that the *res* upon which the court acted is no longer within its jurisdiction. The husband, a fugitive from the matrimonial domicil, came into Montana, by fraud induced its courts to take jurisdiction of his marital status, and now flouts the jursdiction he fraudulently invoked. An answer to this argument which satisfies the judgment and conscience of the court is that, when the husband came into Montana, became a citizen here, and induced the court to inquire into and adjudicate upon his matrimonial status, the court then had jurisdiction of the *res*, to-wit, that status. Through the affirmative action of the husband there was created another *res*, of which our courts have jurisdiction; that is, the judgment of the court dissolving the bonds of matrimony between the

husband and the wife. *(Everett v. Everett, 22 App. Div. 473, 47 N. Y. Supp. 994; 32 Cyc. 468.)* That decree is of record in the court. It is a vital thing which deprives the wife of her marital status in so far as Montana is concerned, and which may deprive her of that status in many other states of the Union. It is mere sophistry to say that thing—that *res*—which has so forceful an existence has no existence. To do so is to recognize a fiction, that the *res* does not exist, and, as observed by Mr. Justice Holmes in the *Haddock Case*: 'Fiction always is a poor ground for changing substantial rights.'

"The plaintiff has come into a Montana court seeking redress for the wrong done her through its action. If she cannot obtain relief from this false judgment in Montana she cannot obtain it anywhere. 'The cause of action arose in this state, for the fraud was committed here if anywhere. The record of the judgment is in this state, and must be canceled here, if it is to be canceled at all. Nowhere else can full and adequate relief be afforded, and the departure of the wrongdoer should not be allowed to defeat it. This jurisdiction cannot be denied without rendering the courts powerless to get rid of judgments which fugitives have procured from them by fraud.' *(Everett v. Everett, supra.)*

". . . But here the wife is not seeking to dissolve the marital status; she is seeking to maintain it. She is not seeking to change her actual status, for, the divorce being void in fact, her status has not in truth been changed. She simply asks the court to declare as a fact what in truth exists, but which a record, fair upon its face, but false in fact, denies,—the marriage. And when the court strikes from the record that which fraud placed there, that object will have been attained. Where one, a citizen, invokes the jurisdiction of the court to adjudicate upon his status and by fraud induces it to enter a decree to the injury of another, the court having jurisdiction over the subject matter in the first instance will assert the authority of maintaining jurisdiction over it in order to right the wrong done."

To the same effect are the decisions in Johnson v. Coleman, Admr., et al., 23 Wis. 452, 99 Am. Dec. 193, and Cates v. Cates, 202 Mo. App. 352, 216 S. W. 573.

In Edson v. Edson, 108 Mass. 590, a case involving similar proceedings on the part of a wronged wife, but in which the husband appeared, the court, in commenting upon the nature of the action, said (p. 598):

"This is not a new suit in the nature of an original proceeding to obtain a decree of divorce, in the course of which it is attempted to treat a former decree as null and void. But it is a petition, addressed to the sound judicial discretion of the court, asking that a decree rendered at a former term may be reopened and vacated, on the ground that it was fraudulently obtained. *It is in the nature of an application to correct the record* and prevent wrong and injustice from the effect of the judgment as it now stands" (italics ours).

In passing on this question, it is also important to consider the nature of a notice of a rule to show cause, as distinguished from other writs, as it has been stated that such a rule is not considered "process" within the meaning of the acts prescribing how service of "process" shall be had.

In a recent work entitled "Motions and Rules in Pennsylvania", by Woodward (published in 1934), in referring to the manner of service of a notice, it is said (p. 272):

"Since . . . notice of a motion or rule is not process it would seem, on principle, that it might be served anywhere, if it gave reasonable opportunity for action."

It appears in the above-cited cases of Everett v. Everett, Johnson v. Coleman, Admr., et al., Cates v. Cates, and State, ex rel., v. District Court et al., in which constructive or so-called "substituted" service of notice was had on a nonresident

husband, that such service was in compliance with statutes of the respective jurisdictions, and following such constructive service the husband entered a special or qualified appearance to have service stricken off. It was also stated in the opinions in those cases that the chief purpose of those statutory requirements, as to notice by publication, was to the end that the respondent might possibly receive actual notice of the charge; in other words, "actual notice" was the real objective sought rather than mere empty compliance with a formality. Whereas in Pennsylvania there is no similar statutory provision providing for service of notice of a rule by publication, on a party residing outside the State, nevertheless, in the absence of such a provision, this court is firmly of opinion that the "actual notice" of said rule to show cause, accompanied by a copy of the wife's petition, which was delivered to the respondent, John Carey, in person, coupled with his acknowledgment of such notice as shown by his consequent action thereon in employing counsel to enter a qualified appearance for him, constitute service and notice sufficient to bring the respondent and the subject matter of the petition within the jurisdiction of this court. In the instant case, respondent received the actual notice which statutes of other States sought to accomplish by publication.

We are impelled to this conclusion as to the sufficiency of service by actual notice, as applied to this case, expressly for the purpose of setting aside a gross fraud that was practiced upon this court as well as upon the wife, the petitioner.

The cause of action arose in Pennsylvania, for the fraud was committed here, if anywhere. The record of the judgment is in this State and must be set aside here if it is to be vacated at all. Nowhere else can full and adequate relief be afforded, and the fact that the wrongdoer has departed to another jurisdiction should not be allowed to defeat such relief. The jurisdiction of this court cannot be denied without rendering the courts powerless to get rid of judgments which fugitives have procured from them by fraud.

In passing on the question of jurisdiction raised by this rule, we must assume the allegations in the petition of the wife, Florence M. Carey, to be true, and that they can be sustained by proper proof, to wit, that libellant, a resident of New York State, came into Pennsylvania and by fraud induced this court to take jurisdiction of his marital status; that he also misrepresented the place of residence of his wife, although well knowing where she was at that time, this for the purpose of concealing his designs from her; and that he attained his ends by severing the marital tie and then returned to his actual place of residence in New York State. The libellant in said divorce proceeding now challenges the jurisdiction of this court, which he fraudulently invoked in behalf of his designs, claiming to be immune from service of our notice by reason of nonresidence. If libellant, by such course of conduct can render himself immune from service of notice of a rule issued out of the very court he deceived, then the court would find itself powerless to set aside the decree obtained by fraud. In view of the authorities above cited, we cannot admit that his position can be sustained. To admit the court's inability to correct such a wrong would be to put a premium on fraud and deception. Despite the absence of a statute in Pennsylvania providing that notice of a rule may be served by publication on a nonresident, such as is enacted in some other States, this court does not believe that we are so fettered and handicapped as to stand powerless in the presence of such a situation. It has been well said:

"The law respects form less than substance . . . . and for every wrong there is a remedy. . . .

"In the language of Lord Chief Baron Pollock in *Rogers* v. *Hadley* [32 L. J.

Exchq. N. S. 241, 248]: 'Fraud cuts down everything. The law sets itself against fraud to the extent of breaking through almost every rule, sacrificing every maxim, getting rid of every ground of opposition. The law so abhors fraud that it will not allow technical difficulties of any kind to interfere to prevent the success of justice, right and truth' ": State, ex rel., v. District Court et al., supra, p. 509.

In the absence of any decision by the appellate courts of Pennsylvania holding otherwise, this court adopts and applies the principles that were applied in the cases above cited, and holds that this court continues to retain jurisdiction over the subject matter of the controversy, to wit, the marital status of the libellant, John Carey, and the judgment entered in said divorce proceedings, and by service of actual notice on him of the rule to show cause, issued on the petition of Florence M. Carey, as well as of a copy of her said petition, the said John Carey is, for the purpose of passing on this question, within the jurisdiction of this court.

In disposing of this rule to show cause why these proceedings should not be dismissed for want of jurisdiction, it is not necessary for us to pass upon the merits of the wife's complaint. That will be for a later hearing. However, we might add, in passing, that the principle is well established in Pennsylvania that a court of common pleas has power to vacate a decree of divorce obtained by fraud or imposition: Boyd's Appeal, 38 Pa. 241; Allen v. Maclellan, 12 Pa. 328; Willetts v. Willetts, 96 Pa. Superior Ct. 198; Fleming v. Fleming, 83 Pa. Superior Ct. 554.

## Decree

And now, to wit, October 4, 1934, the rule, upon the said Florence M. Carey, to show cause why the within-mentioned proceedings should not be dismissed for want of jurisdiction, is discharged, and respondent, John Carey, is ordered to appear generally and plead within 15 days from the date of this decree.

From Harry Alvan Baird, Williamsport, Pa.