STEBBINS, Appellant, v. MORRIS, Respondent.

[Submitted January 18, 1897.  Decided January 25, 1897.)

*Husband and Wife—Agreement to Separate—Pleading.*

Husband and Wife—*Agreement to Separate.*—An agreement between husband and wife providing for a separation, an adjustment of their respective interests in property and for the future support and maintenance of the wife, is valid only when it is to take effect at once and is immediately complied with, and when the marital relations are of such a character as to render a separation necessary for the health or happiness of one or the other; mere willingness to live apart is not enough, neither will the agreement be enforced when it is the result of mutual caprice or reckless disregard of marital obligations; neither will such an agreement be enforced when it is to be used as a means to facilitate a divorce.

Same—*Held*, accordingly, a demurrer to the complaint was properly sustained, where the complaint alleges the agreement to live apart, the mutual obligations thereunder and the breach of the contract by the husband, but neither the agreement nor the complaint contains any statement of facts showing the necessity or cause for such separation.

*Appeal from District Court, Park County; F. K. Armstrong, Judge.*

·Action by Ellen M. Stebbins against Robert O. Morris. Demurrer to the complaint · was · sustained, and plaintiff ·appeals.  Affirmed.

Statement of the case by the justice delivering the opinion.

In her complaint the plaintiff alleges "that on the 20th day of June, 1885, for the purpose and object of settling and adjusting the interest and right of herself and husband in and to certain property, and for the purpose of providing for the future support and maintenance of the plaintiff by the said defendant, and as evidence of their determination and agreement not to live together as man and wife any longer, the said parties made and entered into a contract in writing and articles of separation, a copy of which is hereto attached, marked 'Exhibit A.' " Further on it is alleged that the defendant, although often requested, has failed and refused to pay over to the plaintiff any of the proceeds derived from the sale of the product of the oil wells mentioned in the agreement, but

has converted the same to his own use. Continuing, she avers "that since the said 20th day of June, 1885, and since the making of said contract, this plaintiff, in an action commenced by herself against this defendant in the district court of the First district of the territory of Montana, holding terms at Bozeman, Montana, obtained a decree of divorce dissolving the bonds of matrimony heretofore existing between them; that this plaintiff, relying upon the terms and provisions of said contract so made and entered into by and between them relative to their said property so acquired and owned by them as aforesaid, did not make any demand or claim for any adjustment or decree as to their said property or right therein, but relied upon said contract, and believed that the defendant would carry the same out." Exhibit A reads as follows: "This article and deed of separation, made and entered into the 20th day of June, 1885, by and between Robert O. Morris, husband, of Gallatin county, and Montana territory, party of the first part, and Ellen M. Morris, wife, of the said county and territory, party of the second part, witnesseth: That for and in consideration of the sum of one hundred dollars in hand paid by the said party of the first part to the said party of the second part, and other and divers considerations hereinafter mentioned have by these presents agreed, and by these presents do agree, for the rest of their natural lives to live separate and apart from each other, and to renounce and surrender each to the other all of their marital rights, and it is agreed and understood that the said first party is to pay to the said second party the sum of one hundred dollars on the 20th day of October, 1885, and the further sum of two hundred dollars on the 20th day of March, 1886; and it is further agreed and understood by the parties hereto that the party of the first part, or his agent, J. L. Morris, of McKean county, Pennsylvania, or any other agent the said first party may select to act for him, shall pay to the said second party the one-half of the net proceeds arising from the sale of oil on what is known as the 'Morris Homestead,' in Bradford township, McKean county, Pennsylvania, to the extent of the interest now

owned by the said Robert O. Morris in the oil wells upon said land.   The one-half of all proceeds due the said first party arising from the sale of oil as aforesaid to be paid to the said second party, her agent or attorney, monthly after and immediately upon the sale of oil being made and as long as oil is produced upon said tract of land.   And it is further provided that the said first party shall have and make no claim for the services of the party of the second part, and shall not be liable for her support and maintenance, or for any debts hereinafter contracted by her.   That the said party of the second part agrees to release, and does hereby release, all claims of dower or other demands against the personal or real estate of the said party of the first part.   In witness whereof the said parties have hereinafter set their hands and seals the day and year first above written.   Robert O. Morris.   [Seal.]   Mrs. Ellen M. Morris.   [Seal.] ''   (Duly verified and acknowledged.)   The prayer is for an accounting, and for the enforcement of the terms of the agreement.   Defendant filed a general demurrer.   This the court sustained, and, upon the plaintiff's abiding by her complaint, judgment was rendered against her.   She appeals from this judgment.

*Smith & Wilson* and *H. J. Miller*, for Appellant.

The court below erred in sustaining the demurrer to the complaint.   (Pomeroy's Equity Jurisdiction (2d Ed.) Vol. II. § 932; Story's Equity Jurisaiction (12th Ed.) §§ 1379, 1380; *Garbet* v. *Bowling*, 81 Mo. 214; *Carson* v. *Murray*, 3 Paige 483; *Clark, Trustee,* v. *Fosdick* (N. Y.) 6 L. R. A. 132; *Galusha* v. *Galusha* (N. Y.) 6 L. R. A. 487 ; *Winn* v. *Sanford*, 148 Mass. 39; *Walker* v. *Walker*, 9 Wall. 743; *Rodney* v. *Chambers*, 2 East. 297; *Bettle* v. *Wilson*, 14 Ohio 257; *Dupre* v. *Rein*, 56 How. Pr. 230; *Calkins* v. *Long*, 22 Barb. 97; *Worrall* v. *Jacob*, 3 Mer. 256; *Hobbs* v. *Hull*, 1 Cox 445; *Scott's Appeal* (Pa.) 23 A. 214; *Storey* v. *Storey*, 125 Ill. 608; *Rains* v. *Wheeler*, 76 Tex. 390; *Wallingsford* v. *Allen*, 10 Peters 583; *Fitzer* v. *Fitzer*, 2 Atk. 526; *Gurth* v. *Gurth*, 3 Brown's Ch. 616; *Frampton* v. *Frampton*,

4 Beav. 287; Pomeroy's Equity Jurisdiction (2 Ed.) § 1100; Story's Equity Jurisdiction (12 Ed.) §§ 1279, 1380; *Wallingsford* v. *Allen*, 10 Peters 583; *Shepard* v. *Shepard*, 7 Johnson Ch. 57; *Agnew's Appeal* (Pa.) 12 A. 160; *Gurth* v. *Gurth, supra; Fitzer* v. *Fitzer, supra; Frampton* v. *Frampton, supra.*

*Campbell & Stark,* for Respondent.

Buck, J.—The main question discussed in the briefs on file in this case is whether or not the contract set forth in plaintiff's complaint is void as against public policy. Under the Montana Codes which took effect in 1895 (sections 215, 216, Civil Code), an agreement for an immediate separation between a husband and wife is expressly allowed, and their mutual consent is declared to be a sufficient consideration. The present controversy arose, however, even prior to the enactment in 1887 of what is generally known as the "Married Woman's Emancipation Act." This necessitates a consideration of the question with reference to the common-law status of a married woman as this was substantially the legal status of the plaintiff when she entered into the agreement. Agreements for separation have been a fruitful source of litigation. To an investigator of the many decisions on the subject, both in the United States and England, it is apparent that a majority of the later judges, in sustaining such agreements, have acted reluctantly, with a latent suspicion in their own minds of the legal logic of their conclusions. They seem to have yielded to precedent with a disagreeable consciousness that what they declare to be the law is such rather as the result of judicial legislation than anything else. Chancellor Walworth, in *Carson* v. *Murray*, 3 Paige 500, says : "It may well be doubted whether public policy does not forbid any agreement for a separation between husband and wife, except under the sanction of a court of justice; and whether it does not also require that such agreements should be limited to those cases where, by the previous misconduct of one of the parties, the other is entitled to have the marriage contract dissolved, either

wholly or partially, by a decree of the competent tribunal.'' And then, after commenting on the protests of Lord Eldon against the doctrine of sustaining such agreements, expressed in *St. John* v. *St. John*, 11 Ves. page 526, and *Westmeath* v. *Westmeath*, Jac. 126, the chancellor proceeds : "It has, however, long since become the settled law in England that a valid agreement for an immediate separation between a husband and wife, and for a separate allowance for her support, may be made through the medium of a· trustee. And, as many of the decisions which have gone to the greatest length on this subject took place previous to the .Revolution, they have been recognized here as settling the law in the state to the same extent.'' In somewhat the same manner the supreme court of the United States, in *Walker* v. *Walker*, 9 Wall. 750, expresses its adherence to the doctrine. In that case the court said : "It is contended that deeds of separation between husband and wife cannot be upheld, because it is against public policy to allow parties sustaining that relation to vary their duties and responsibilities by entering into an agreement which contemplates a partial dissolution of the marriage contract. If the question were before us, unaffected by decision, it would present difficulties, for it cannot be doubted that there are some serious objections to voluntary separations between married persons. But contracts of this nature for the separate maintenance of the wife, through the intervention of a trustee, have received the sanction of the courts in England and in this country for so long a period of time that the law on the subject must be considered as settled.'' See, also, Schouler on Dom. Rel. § 215 *et seq.*; Bishop on Marriage, Divorce and Separation, Vol. 1, § 1263 *et seq.* The reason for this doubt and reluctance on the part of these judges is due to the fact that the public is directly interested in the inviolability of the marriage contract, and that the power to sever the tie is vested in the courts alone. It also results from the general doctrine that at common law a married woman had no contractual capacity. (*Legard* v. *Johnson*, 3 Ves. Jr. 352.) Certainly, when confronted by these rules of law, the doctrine

that a contract entered into by a married woman and her husband for separation is enforceable without enabling statutes, trenches strongly on judicial legislation. The later English courts have gone much further in this direction than most of the American courts. In commenting upon the language used in his decision on this question by an English judge, Mr. Bishop, in his work on Marriage, Divorce and Separation (section 1263, volume 1), indulges in the following somewhat too vigorous criticism : "In the United States public opinion changes law as often as it does in England, but with us legislation ratifies the change; and, until the ratification in this form transpires, the judiciary is compelled, however much against its will, to remain quiescent." But a more elaborate discussion of the arguments for and against the doctrine would be of interest only to the curious student. However logical and sound the reasoning that has been and may be urged contra, by force of precedents it is firmly imbedded in the common law as interpreted by many of the best courts in the United States. See cases *supra;* also *Bettle* v. *Wilson*, 14 Ohio 257; *Garbut* v. *Bowling*, 81 Mo. 214; *Randall* v. *Randall*, 37 Mich. 563; *Blaker* v. *Cooper*, 7 Serg. and R. 502; *Wells* v. *Stout*, 9 Cal. 480; *Clark* v. *Fosdick* (N. Y. App.) 22 N. E. 1111; *Rains* v. *Wheeler*, 76 Tex. 390, 13 S. W. 324, and numerous other authorities. We are compelled to accept the general doctrine of these cases. But we are of the opinion that it is clearly subject to these limitations. An agreement for a separation which is to take place in the future is void as against public policy. So, too, after such an agreement is entered into, its terms must be immediately complied with on peril of nullity. And at the time of the making of such an agreement the relations between the husband and wife must be of such a character as to render the separation a matter of reasonable necessity for the health or happiness of the one or the other. There must be a moving cause for it in addition to the mere mutual volition of the parties. If it is the outcome of mutual caprice only, or a reckless disregard of the obligation of the marriage tie, then the courts will not en-

force it. In almost all the cases that we have investigated, either from the recitals in the agreement for separation itself or from extrinsic evidence offered in connection therewith, the court has had before it an unhappy condition of marital relations as a moving cause for the contract. Judges have carefully discriminated between agreements for separation, outgrowths of domestic sorrow, entered into for the purpose of avoiding public scandal or notoriety, and those which have resulted from a wanton or reckless disregard of one of the highest obligations of life,—the duty which the husband and wife mutually owe to each other and to the public at large. In this view of the law, an agreement for separation of the latter kind would be a mere usurpation of the power conferred upon the courts alone to adjust marital dissensions in decrees of divorce.

Tested, then, by these rules, what does this complaint show? Merely that the plaintiff and defendant agreed to separate, and divide the property which they had hitherto enjoyed together. No intimation is contained in the complaint that there was any necessity or moving cause for the separation other than mere caprice or purely voluntary consent. There is no allegation under which any other evidence in respect to it could be presented to the court. The demurrer was properly sustained. Had the complaint properly set forth any urgency or reasonable necessity for the agreement, then, no doubt, a cause of action would have been stated. Had it properly averred that the plaintiff had been imposed upon or defrauded by her husband in respect to this agreement, such averments would no doubt have altered the phase of the situation, and entitled the plaintiff to the relief demanded. But no such allegations appear. The complaint, too, while not perhaps directly susceptible of the inference,—from the ambiguous manner in which it refers to a subsequent divorce obtained by the plaintiff,—might very readily have engendered a suspicion in the mind of the district judge that the agreement had been entered into in contemplation of the divorce. In fact, from his written opinion, now before us, it appears

that he did entertain such a suspicion.        Moreover, counsel for respondent assert in their brief (and the statement is uncontroverted by the counsel for appellant) that the divorce was obtained on the same day that the agreement was entered into. If this is a correct statement, there is no impropriety in our citing another line of authorities, which, while generally illustrative of the principles of law governing agreements for separation we have been discussing, may also particularly apply to and settle this controversy.        It is a general and uniform rule that any agreement entered into between husband and wife with a view to facilitating the dissolution of their marriage contract is void.        (See *Phillips* v. *Thorp*, 10 Or. 494; *Speck* v. *Dausman,* 7 Mo. App. 165; *Cross* v. *Cross*, 58 N. H. 373; *Kilborn* v. *Field*, 78 Pa. St. 194.  If, then, the agreement relied upon in this case was entered into between the parties in contemplation of and for the purpose of facilitating the divorce obtained by the wife, it should be held void, as collusive.        If, however, it can be established that it was entered into without any collusive intent, and as merely incidental to a decree of divorce obtained without collusion, the plaintiff's right to recover would assume a different aspect.        (See *Schmieding* v. *Doellner*, 10 Mo. App. 373; *Storey* v. *Storey*, 125 Ill. 608, 18 N. E. 329.)

Respondent's counsel claim that this agreement is executory in character, and for this reason not enforceable; but we do not approve the attempted distinction.        Nor do we agree with their contention that the agreement is void because there was no intervention of a trustee.        Many of the courts have clung to the old doctrine that the intervention of a trustee is essential to the validity of an agreement for a separation, but we are of opinion that the more correct and modern rule is that no such intervention is necessary.        See *Boone* v. *Chiles*, 10 Pet. 255; 1 Beach on Modern Equity Jurisdiction, § 198. The judgment is affirmed, with costs, but it is ordered that the cause be remanded, with directions to the lower court to grant leave to the plaintiff to amend her complaint within a reason-

able time, if, bringing herself within the tests of the law as herein stated, she has a cause of action.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.

