## SOMMERS, APPELLANT, *v.* GOULD, RESPONDENT.

### (No. 3,771.)

### (Submitted April 23, 1917.   Decided May 23, 1917.)

### [165 Pac. 599.]

*Election   Contest—Attorney's   Fee—Residence—Declarations— Admissibility—Correctness of Returns—Presumptions.*

Election Contest—Attorney's Fee.
   1.   Where the contestant in an election dispute fails to make out a *prima facie* case, he may be taxed with a reasonable attorney's fee in favor of the contestee.

Same—Residence—Evidence—Declarations—Admissibility.
   2.   The residence of a voter is to be determined from his acts and intent; it may be established by circumstantial evidence, as well as by his declarations touching the subject, if a part of the *res gestae*, of if made in disparagement of his right to vote, at or before the election.

Same—Lack of Qualifications—Presumptions.
   3.   Slight proof of the lack of any necessary qualification to vote is sufficient to overcome the presumption arising from registration or previous voting, and calls for evidence in affirmation of the voter's qualifications, from the party who would benefit from the vote.

Same—Residence—*Prima Facie* Case.
   4.   By establishing as a fact that a voter's family resided in a city ward other than the one in which he voted, contestant made out a *prima facie* case against the voter's right to vote where he did cast his ballot.

   [As to "residence" as synonymous with "domicile" in statute regulating qualifications of voter, see note in **Ann. Cas. 1915C**, 792.]

Same—Correctness of Returns—Evidence.
   5.   Until impeached, election returns furnish *prima facie* evidence of their correctness.

*Appeal from District Court, Madison County; W. A. Clark, Judge.*

ELECTION CONTEST by Fred W. Sommers against Merton S. Gould. From a judgment of dismissal and an order denying him a new trial, contestant appeals. Reversed and remanded.

*Mr. M. M. Duncan* and *Mr. Henry C. Smith,* for Appellant, submitted a brief; *Mr. Smith* argued the cause orally.

"The fact of a voter's residence can be proved by others than the voter." (Paine on Elections, sec. 59; *State* v. *Marshall,* 45 N. H. 281.) "By a removal from one election district to another within ten days before election, a person otherwise qualified loses his right to vote, since a citizen must have resided in the district where he offers to vote at least ten days before election." (*In re McDaniels,* Brightly Election Cases, 238, 3 Pa. Law Journal, 310.) The place where a man's family resides is ordinarily his place of residence. (Paine on Elections, sec. 48; *Berry* v. *Hull,* 6 N. M. 643, 30 Pac. 936.)

Evidence of the conduct or declarations of a voter, afterward as well as before the day of voting, may be received to ascertain his intentions as to his place of residence on that day. (McCrary on Elections, sec. 106; Paine on Elections, sec. 773; *People ex rel. Smith* v. *Pease,* 27 N. Y. 45, 84 Am. Dec. 242; *State* v. *Olin,* 23 Wis. 309, 319; *French* v. *Lighty,* 9 Ind. 475, 478.)

"Domicile is often a question of intent, and the declarations of an elector, made at the time of voting, are admissible as part of the *res gestae,* and when made previous to that time, if in disparagement of his right." (*Boyer* v. *Teague,* 106 N. C. 576, 19 Am. St. Rep. 547, 11 S. E. 665; *Lane* v. *Bailey,* 29 Mont. 548, 75 Pac. 191; *Patton* v. *Coates,* 41 Ark. 111; *Beardstown* v. *Virginia,* 81 Ill. 541; *Sharp* v. *McIntire,* 23 Colo. 99, 46 Pac. 115; *Black* v. *Pate,* 130 Ala. 514, 30 South. 434; 15 Cyc. 292, 422.)

The privilege of not answering for whom he voted was a personal one, and could have been waived by Webb. (*Lane* v. *Bailey, supra;* 15 Cyc. 424, and cases cited.) If the elector himself chooses to make his vote public, it is no concern of any

candidate for office. (*People* v. *Cicott,* 16 Mich. 283, 97 Am. Dec. 141; 15 Cyc. 423.) But this protection extends to legal voters only. (15 Cyc. 424; McCrary on Elections, sec. 492; *People* v. *Cicott, supra; State ex rel. Heath* v. *Kraft,* 18 Or. 550, 23 Pac. 663.)

*Messrs. Callaway & Beckett,* for Respondent, submitted a brief; *Mr. Lou L. Callaway* argued the cause orally.

Where one registers as a voter and votes upon that registry, the place where he registered and voted must be deemed his residence until it is shown that he has acquired another residence. Until he changes residence as defined in the statute, he retains his residence where he registered and voted. It being conceded that Webb and Twitchell were registered, and that they voted in the precincts where they were registered, the presumption is that they retained their residence and voted properly until the presumption is overcome by proof which is clear, satisfactory and convincing.

It is the general rule that a person who has voted is presumed to have been qualified until the contrary is proved. (*Dale* v. *Irwin,* 78 Ill. 170; *Moss* v. *Patterson,* 40 Kan. 720, 20 Pac. 454.)

We can see no good reason to cite cases relating to what constitutes residence or how it may be proved, and base our assertion upon what this court has said in *Carwile* v. *Jones,* 38 Mont. 590, 101 Pac. 153. If it were useful to cite cases from other jurisdictions, the woodchopper case—*Smith* v. *Thomas,* 5 Cal. Unrep. 976, 52 Pac. 1079—is much nearer in point than any which appellant has cited.

It is a general principle that a mere change of residence is not sufficient to acquire a domicile elsewhere, unless it is intended to be permanent. A mere temporary absence for a temporary purpose does not result in an abandonment of a domicile. (10 Am. & Eng. Ency. of Law, 2d ed., sec. 600; *Huston* v. *Anderson,* 145 Cal. 320, 78 Pac. 626.)

When the legality of a vote is in doubt, the voter cannot be compelled to disclose how he voted. (*People* v. *Cicott*, 16 Mich. 283, 97 Am. Dec. 141; McCrary on Elections, sec. 492.)

The court properly struck out the hearsay testimony as to what Webb and Twitchell were said to have told concerning the way they voted. The great weight of authority is to the effect that such testimony is inadmissible. (*Gilliland* v. *Schuyler*, 9 Kan. 569; *People ex rel. Dean* v. *Commissioners*, 7 Colo. 190, 2 Pac. 912; *Berry* v. *Hull*, 6 N. M. 643, 30 Pac. 937; *Lauer* v. *Estes*, 120 Cal. 652, 53 Pac. 262; *Smith* v. *Thomas*, 121 Cal. 533, 54 Pac. 71; *Rucks* v. *Renfrow*, 54 Ark. 409, 12 L. R. A. 362, 16 S. W. 6; *Edwards* v. *Logan*, 114 Ky. 312, 70 S. W. 852, 75 S. W. 257.)

A legal voter may refuse to testify. (*Lane* v. *Bailey*, 29 Mont. 548, 75 Pac. 191; *Pedigo* v. *Grimes*, 113 Ind. 148, 13 N. E. 700.) If section 52, page 614, Laws of 1913, be invalid, then even an illegal voter cannot be compelled to testify as to how he voted when such a disclosure would tend to criminate him. (*Tunks* v. *Vincent*, 106 Ky. 829, 51 S. W. 622; *Scholl* v. *Bell*, 125 Ky. 750, 102 S. W. 248.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the election held in the town of Twin Bridges in April, 1915, A. J. Wilcomb and Merton S. Gould were rival candidates for the office of mayor. The canvassing board returned that Wilcomb received eighty-two votes and Gould eighty-three, and a certificate of election was thereupon issued to Gould. Fred W. Sommers contested Gould's election, upon the ground that two illegal votes were cast and counted for Gould in ward 1, and that such votes were cast by Eli Twitchell and Roland A. Webb, neither of whom, it is alleged, was a resident of that ward at the time. Gould answered, and denied that he had any knowledge or information sufficient to form a belief as to whether Wilcomb received eighty-two legal votes, or any

greater number than seventy-nine; admitted that the canvassing board returned that Wilcomb received eighty-two votes, and denied that any illegal votes were cast or counted for him. Upon the trial it was admitted that Twitchell and Webb were both registered in ward 1 and both voted in that ward. Touching the qualifications of these two voters, the contestant offered evidence to the following effect:

Webb is a single man, about twenty-three years old. For seven or eight months prior to the election in question he was working on a ranch about ten miles from Twin Bridges. During that time he came to Twin Bridges occasionally, and stopped either at the Duella rooming-house, in ward 3, or at the Stark Hotel, in ward 2; but in either instance he occupied a room provided for him by his employer.

Sommers testified that he has lived in Twin Bridges for twenty years, and in ward 1 for eight years; that at the time of this election he was an alderman for ward 1; that there are only about eighty voters in the ward, and that he knows them all personally; that he knows Webb; that he knows that Webb did not live in ward 1 for at least a year prior to the election in April, 1915.

Wilcomb testified that he has lived in Twin Bridges continuously for seventeen years; was mayor of the town from May, 1913, to May, 1915; that he lived in ward 1 at the time of the election in question; that he is well acquainted in the town, which has a population of only about 500; that he has known Webb for five or six years; that he knew him first when he lived on a ranch near Twin Bridges, but outside the corporate limits of the town; that he knew him afterward, when he lived in Sheridan and Rochester; that in the summer of 1914 he worked in ward 1 and took his meals at a hotel in that ward, but had his room and slept in ward 3; and that he has never lived in ward 1 to the knowledge of the witness.

Gallahan, a judge of election in ward 1, testified that Webb came to the polling place on election day, ostensibly for the purpose of voting; that, when asked where he roomed, he re-

plied at the Stark Hotel; that, when questioned concerning his right to vote in ward 1, "He said he did not know whether he had a right to or not," and, when asked upon what theory he sought to vote in that ward, he replied, "We have some lots up town"; that he left, but returned soon afterward, and discussed his right to vote further, but again went away; that he came for the third time, and, having taken and subscribed the statutory oath required of challenged voters, received his ballot and cast his vote.

Concerning Twitchell's residence, Sommers, Wilcomb and Harvey testified that Twitchell has a house in ward 1, where he lived for a year or more prior to the fall of 1914; that he then moved his family into two small rooms in ward 3, where they have since lived, and where they cook, eat and sleep; and that, since they moved, their house in ward 1 has been rented to other parties, who have occupied it. After they moved, and before election, Twitchell asked Wilcomb whether an elector, who removes after registering, must re-register in order to vote, and Wilcomb understood from the circumstances that Twitchell was referring to himself.

Upon this evidence, offered by the contestant, the court held that a *prima facie* case of nonresidence had not been made out against either Webb or Twitchell, excluded evidence as to how either voted, and entered judgment dismissing the contest, and awarding contestee his costs and an attorney fee, amounting in the aggregate to $323.90. From the judgment, and from an order denying a new trial, contestant appealed. The term of office involved herein has expired, and the controversy now involves only the question of costs.

If the court was correct in holding that contestant did not [1] make a *prima facie* case, it was correct in taxing against him a reasonable attorney fee. (*Doty* v. *Reece, ante,* p. 404, 164 Pac. 542.) Whether contestant shall be held for this judgment for costs depends upon the answer to the inquiry: Did he make out a *prima facie* case that Webb and Twitchell were not legal residents of ward 1 when they voted therein on April

5, 1915? To constitute either of these men a legal voter, he must have resided within the state a year (sec. 462, Rev. Codes), within the town six months, and within the ward thirty days, immediately preceding the election (sec. 3231, Rev. Codes).

It would be extremely difficult to give a comprehensive and accurate definition of the term "resident" as used in our election laws. The statute does not attempt to define it, but does describe certain rules for determining in the first instance whether a voter is a legal resident of the precinct or ward where he votes. Section 24 of an Act approved March 8, 1915 (Laws 1915, p. 263), sets forth eleven rules designed to aid registration and election officers in determining the residence of a prospective voter. Of necessity, these rules are very general in their terms, and furnish but uncertain assistance at the best. Rule 1 provides: "That place must be considered and held to be the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning." (Page 273.) Under rules 4 and 5 a person will not be deemed to have lost his residence by reason of his absence for temporary purposes only. Rule 8: "The place where a man's family resides is presumed his place of residence." Rule 9: "A change of residence can only be made by the act of removal joined with the intent to remain in another place. There can only be one residence. A residence cannot be lost until another is gained." (Page 274.)

The residence of a voter is to be determined from his acts [2] and intent; but this fact, like any other fact involved in a civil action or proceeding, may be established by circumstantial evidence, and any declarations of the voter touching the subject, if a part of the *res gestae,* or any declarations in disparagement of his right to vote, if made at or before the election, may be received in evidence. (*People ex rel. Boyer* v. *Teague,* 106 N. C. 576, 19 Am. St. Rep. 547, 11 S. E. 665; *Behrensmeyer* v. *Kreitz,* 135 Ill. 591, 26 N. E. 704; 15 Cyc. 292; 9 R. C. L. 1032.)

From the fact that Webb registered in ward 1, there arose
[3]  a presumption in favor of his right to vote there.  To
overcome this presumption involved the proof of a negative,
and in such case the same high quality of evidence is not re-
quired as is ordinarily necessary to prove an affirmative fact.
The rule generally recognized is that slight proof of the lack
of any necessary qualification to vote is sufficient to overcome
the presumption arising from registration or voting, and calls
for evidence in affirmation of the voter's qualifications from the
party who would benefit from the vote.  (*People* v. *Pease,* 27
N. Y. 45, 84 Am. Dec. 242; *Beardstown* v. *Virginia,* 76 Ill. 34;
5 Ency. of Evidence, 116.)  To determine the sufficiency or in-
sufficiency of evidence to establish the residence or nonresidence
of a voter requires a more or less arbitrary application of the
rules of law to the facts presented, and though the evidence
tending to impeach Webb's right to vote in ward 1 is not very
clear and convincing, we think it is sufficient to make out a
*prima facie* case.  (*State ex rel. Hopkins* v. *Olin,* 23 Wis. 309.)

The evidence touching Twitchell's residence is much more
[4]  substantial.  His family resided in ward 3, and, when this
fact appeared, the contestant made out a *prima facie* case
against his right to vote in ward 1.  (*Carwile* v. *Jones,* 38
Mont. 590, 101 Pac. 153; Rule 8, above.)

It was not necessary for the contestant to show the number
[5]  of legal votes cast for Wilcomb.  Neither the correctness
of the canvassing board's return nor the validity of any votes
so returned is questioned by the answer.  The admission that
the board returned that Wilcomb received eighty-two votes is,
under the circumstances, tantamount to an admission that he
received that number of votes.  Until impeached, the returns
furnish *prima facie* evidence of the correctness of the result so
returned.  (15 Cyc. 418.)

The judgment and order are reversed and the cause re-
manded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.