HERRIN, APPELLANT, v. HERRIN, RESPONDENT.

(No. 7,570.)

(Submitted November 30, 1936. Decided December 11, 1936.)

[63 Pac. (2d) 137.]

470

*Messrs. Toomey, McFarland & Chapman,* for Appellant, submitted a brief and a supplemental brief on re-argument; *Mr. John W. Chapman* argued the cause orally.

*Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* for Respondent, submitted an original and a supplemental brief and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

The complaint in this action alleges desertion as the sole ground upon which the plaintiff seeks the decree of divorce

prayed for; the answer denies all the material allegations of the complaint and by cross-complaint brings in issue the domicile of the parties, and alleges the voluntary and willful desertion of the defendant by the plaintiff; that plaintiff possesses property of the reasonable value of $10,000; that defendant is without means, money, or property with which to maintain herself or to pay the costs of this litigation; that she does not desire to be divorced from plaintiff but does desire separate maintenance and attorney fees to defend this action; that plaintiff has willfully neglected to provide for defendant while having the ability to do so. The reply traverses all of the affirmative allegations of the cross-complaint, and pleads a contract between the parties, providing for separation and divorce and making a property settlement upon the wife. The alleged contract is made an exhibit to the reply and by reference incorporated therein. By "sur-reply" defendant admits the execution of the contract pleaded by plaintiff, but alleges the same to be void on the ground of public policy.

The matter was tried by the court sitting without a jury, "a jury having been waived in open court"; testimony was received, arguments by counsel were heard, findings were submitted; the matter was taken under advisement, and the court thereafter made and filed its findings and judgment denying plaintiff's petition for divorce and granting defendant's prayer for separate maintenance, fixing the sum that plaintiff was ordered to pay the defendant at $35 per month and her attorney's fees at $100. A motion for a new trial was duly made and overruled; plaintiff's exceptions to the court's findings were likewise overruled. Plaintiff appeals from the judgment and from the court's order overruling his exceptions to the findings.

The record before us shows vital errors in the findings and conclusions of the trial court, and the evidence contains much that is immaterial and irrelevant, and on important facts is too obscure and uncertain to enable this court to determine the controversy with full confidence in the fairness and justice of such determination. For such reasons the cause will be re-

manded for a new trial. For the sake of brevity we will not take up the thirteen assignments of error specified by counsel for plaintiff, but, in accordance with the provisions of section 8805, Revised Codes, point out the objectionable matters in the record and pass upon those we deem essential to a final determination of the case.

The plaintiff and defendant were married in 1906 and went to live on plaintiff's ranch near Wolf Creek, Lewis and Clark county. There was no issue by the marriage, but, defendant's parents being dead, the parties furnished a home and schooling for three or four minor sisters and brothers of the defendant until such minors reached the age of majority. The plaintiff operated a large ranch, dealing in cattle and sheep, and the parties appear to have been reasonably prosperous and happy until circumstances arose by which the plaintiff's business affairs became involved and the ranch and other property was taken over by plaintiff's bankers. In the fall of 1930 the parties went to California. The following April the plaintiff returned to Montana, leaving defendant in Californa, but returned to California in the fall of 1931. Plaintiff remained in California during the winter of 1931–32, and up until September 10, 1932, at which time he returned to Montana, where he has since resided.

The first error is on the question of the domicile of the parties. The trial court found that they moved from Montana to California in October, 1930, with the intention of making their permanent residence there. Plaintiff contends throughout his testimony that he never intended to abandon his legal residence in Montana, and such contention is corroborated in substance by the testimony of the defendant, where she testified, "I wanted to go back with him and live with him but he said he would go home and come back." This testimony relates to the time the plaintiff returned to Montana the first time, namely, in April, 1931, after the parties had gone to California the previous fall. At another time the defendant testified in response to her counsel's questions as follows:

"Q. Did you want to live in California at any time as distinguished from Montana? A. Never. I was always willing and anxious to come back.

"Q. And you did come back? A. I did come back. In fact, I lost a vote down there. I had always voted in Montana and if I had intended to stay I would have registered in California."

Defendant refers to Montana as "home" and obviously did not register and vote in California, as she intended to return here.

This is the substance of the testimony as to the residence of the parties, and clearly fixes the domicile of both in Montana, and the court's finding that they removed to California with the intent to establish a domicile there is clearly erroneous. The rule is laid down in *Sommers* v. *Gould*, 53 Mont. 538, 544, 165 Pac. 599, 601, where this court said: "A change of residence can only be made by the act of removal joined with the intent to remain in another place. There can only be one residence. A residence cannot be lost until another is gained."

The second error is on the conclusion of the trial court that █ the agreement between the parties by which plaintiff turned over certain property to the defendant, and in which agreement reference is made to separation and divorce, is void on the ground of public policy. We think the court's ruling that such contract is void on the ground of public policy is correct in so far as it relates to a divorce. The testimony of Judge Galen, who drew the agreement for the parties, substantially supports the contention of counsel for defendant that such agreement comes within the rule laid down in *Sherman* v. *Sherman*, 65 Mont. 227, 211 Pac. 321, 322, where this court said: "If, however, the agreement be entered into with the intent of bringing about or facilitating a divorce, it will be declared void." But we think it repugnant to sound principles of equity to permit one to profit by the provisions of such an agreement and then avoid its objectionable parts by invoking the rule mentioned, and we therefore hold the contract to be

474

separable. This conclusion is one of first impression in this jurisdiction in actions of this nature so far as our research reveals; but there is authority for such a rule in actions at law, (*Mattison* v. *Connerly,* 46 Mont. 103, 126 Pac. 851; *Purdin* v. *Westwood Ranch & Livestock Co.,* 67 Mont. 553, 216 Pac. 326; *United States Building & Loan Assn.* v. *Burns,* 90 Mont. 402, 420, 4 Pac. (2d) 703), and we think such a holding is fair and equitable and does substantial justice between the parties. The contract is therefore held to have been entered into for the purpose of facilitating a divorce, and as to that it is void as contrary to public policy, but as to the property settlement it is valid and binding upon both parties.

On the obscurity of the record, objections were interposed ▆ in a number of instances to the introduction of certain evidence on which the court reserved its ruling, and it is not shown that such objections were thereafter ruled upon. We think it is incumbent upon both court and counsel to see that rulings are made before the termination of the hearing. This court's position is made clear on this question in *Gilcrest* v. *Bowen,* 95 Mont. 44, 24 Pac. (2d) 141, and *Langston* v. *Currie,* 95 Mont. 57, 26 Pac. (2d) 160.

We think the evidence in support of the allegation of desertion by the plaintiff and like allegations in the crosscomplaint of the defendant is such as to leave the court in grave doubt on that question. It appears to us that the evidence in the record where the circumstances and the conversations of the parties are recited each time the plaintiff was about to depart from California to return to Montana rather strongly tends to show that the separation of the parties was by mutual consent, apparently submitted to by both under the stress of adverse circumstances, and, further, that the assent of neither to such arrangement was revoked until the plaintiff made known his attitude in the letter of April, 1934, Defendant's Exhibit 1. Construing such a letter as plaintiff's revocation of that arrangement is of no avail to plaintiff, as sufficient time did not elapse between

the time the letter was written and the commencement of plaintiff's action.

On defendant's allegation of desertion in defendant's letter to Judge Galen, parts of which the judge recited in his letter to the plaintiff dated August 11, 1933, the defendant mentions numerous letters written by her to plaintiff to which plaintiff did not reply, and defendant complains of ill treatment at the hands of plaintiff and his neglect, and expresses a strong desire to return to the plaintiff, but defendant's reasons for not rejoining her husband in Montana are not made clear. Letters written by the defendant to the plaintiff during the period of separation might contain illuminating facts that would aid the court in determining the controversy, but no attempt appears to have been made to get such letters or their substance into the record, and here again grave doubts exist as to any intention of desertion.

The cross-complaint alleges plaintiff possesses property of a value in excess of $10,000. Plaintiff testified that all he had was $35 in his pocket and $18 or $20 in the bank. It is fairly clear that plaintiff had $3,500 in cash in a safe deposit box in a Great Falls bank at some indefinite date prior to the fall of 1930, and in 1930 when his ranch was taken over by his bankers he received $7,000 in that settlement, but no showing is made as to what property or money plaintiff had at the time of the hearing in this action, which hearing was had some five years later, or in July, 1935. Plaintiff states $2,500 of the amount was invested in stocks which were given to the defendant, and that other investments resulted in heavy losses. The record shows nothing more as to what became of the, approximately, $10,500. It is not shown what the earning capacity of the plaintiff is, and it would be to no purpose to impose an obligation upon the plaintiff unless he is shown to have the ability to discharge it. (See *State ex rel. Scott* v. *District Court,* 58 Mont. 355, 192 Pac. 829; *State ex rel. Bordeaux* v. *District Court,* 31 Mont. 511, 79 Pac. 13; *State ex rel. Dougan* v. *District Court,*

32 Mont. 34, 79 Pac. 401; *State ex rel. Murphy* v. *Second Judicial District Court,* 99 Mont. 209, 41 Pac. (2d) 1113; also *State ex rel. McLean* v. *District Court,* 37 Mont. 485, 97 Pac. 841, 15 Ann. Cas. 941; annotation, 22 A. L. R. 1260; *Wandel* v. *Wandel,* 76 Mont. 160, 248 Pac. 864.)

The record shows two exhibits by defendant designated as No. 1. We think both should be admitted in evidence, as also Defendant's Exhibit No. 2.

The judgment is reversed and the cause remanded to the district court, with instruction to grant a new trial.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS: I dissent from the foregoing opinion, but, since the majority of the court has approved an order for a new trial, I will make my reasons for such dissent very short.

The opinion finds that there is insufficient testimony to support the finding of the district court that a divorce should be granted the plaintiff. The matter was submitted to the district court, both parties waiving a jury. The writer of the majority opinion says in his opinion that "the testimony on the subject of desertion leaves the court in grave doubt on the question." The doubt was resolved by the district court in favor of the defendant, acting as judge and jury. The decision of the trial court, or the verdict of the jury upon the facts, must be accepted as final, unless there is a total lack of evidence or at least substantial evidence to support the decision or verdict. Authorities are so numerous in support of this proposition that citations are needless. "Grave doubt" is far from a total doubt or a failure of substantial evidence to support the judgment.

The majority opinion says: "The record before us shows vital errors in the findings and conclusions of the trial court, and the evidence contains much that is immaterial and ir- relevant, and on important facts is too obscure and un-

certain to enable *this court to determine* the controversy
with *full confidence* in the fairness and justice of such de-
termination.'' I think this statement, in view of the opinion
recitals, condemns itself and needs no comment.