VERA SCHULZ, Plaintiff and Respondent, *v.* B. C. FOX, Defendant and Appellant, and E. E. BRABENDER, Defendant.

No. 10033.
Submitted September 17, 1959. Decided October 22, 1959.
Rehearing Denied November 23, 1959.
345 Pac. (2d) 1045.

See **C. J. S.** Contracts, § 233.

Collins & Burns, John Collins, Dillon, for appellant. John Collins argued orally.

Poore & Poore, Robert A. Poore and Urban L. Roth, Butte, for respondent. Robert A. Poore and Urban L. Roth argued orally.

MR. JUSTICE CASTLES:

This action was brought to have a certain promissory note and chattel mortgage, given as security, declared void and unenforceable and to enjoin the sheriff from proceeding with a threatened foreclosure sale of the mortgaged property. The parties were married on November 24, 1947, in Nogales, Arizona. The defendant was a mature person, apparently in his fifties, and was employed by the Fish and Game Department of Arizona in winter months. The plaintiff was a mature person, apparently in her forties, and apparently having been previously married. At the time of the marriage, the plaintiff occupied a tract of land in the Beaverhead National Forest in Montana. Later the tract was surveyed and a permit issued to her for a fishing and hunting camp.

Beginning in 1948, and continuing every summer, the parties improved the camp by their labor. At the outset there were no buildings thereon, but there was a camp of sorts. By spring or early summer of 1952 the camp was completed and they were receiving paying guests.

At the time of the marriage, it seems that the dream of the parties in their marital bliss was to build up a fishing and

hunting camp for the summer and fall months in Montana and a winter business of somewhat similar sort in Arizona and Nevada for the winter months. The defendant, then the husband, was a man of some means and put up the first money, some $3,000, and later more. Both parties obviously worked extremely hard on the venture. As related before, the permit from the Forest Service went to the plaintiff, then wife, in her own name. During the time of building the camp, the defendant's mother gave each of the parties $12,000. The $24,000 was apparently used by the parties for their living expenses both in Arizona and in Montana and also to build the hunting camp. There is no question from the record that the parties considered themselves as fifty-fifty partners in the hunting camp venture.

Finally, some time before completion of the camp in 1952, the marriage had rocky passage. In the summer of 1952, the defendant was disabled and spent some time in Basin, Montana, and some time in Arizona. During this interval the parties were not living together as man and wife. During the summer of 1952, the plaintiff had the sole responsibility and effort of running the camp.

During the time the defendant was in Arizona, he received a letter from the plaintiff dated September 23, 1952. The letter submitted into evidence is a devastating homespun epistle. It establishes several facts concerning the situation and the subsequent events which cannot be disputed. It establishes that she intended to get a divorce. It establishes that she felt she owed the defendant considerable money and would pay it off in due time. It establishes that she was trying to sell the camp property.

Some time after receipt of the letter, the defendant returned to Montana from Arizona and the parties set about to adjust their business affairs and she to get the divorce. They spent some time, between the end of September and October 14th, in going over the property and their respective rights. Defendant had owned some land in Arizona, which he obtained as a World War I homestead. The property had been held by him for

some time prior to their marriage. In a renegotiation of contracts concerning the property the plaintiff's name, as the defendant's wife, had been put on the note for a balance. In the settlement of their affairs she turned this back to him. The defendant also had a Mercury car and a pickup truck which were turned back to him. The parties together had a cruiser in Arizona which was sold at a gain of $1,500 prior to this negotiation and the defendant had received that. He also had some bank accounts which the plaintiff at the time obviously respected as his personal property. In 1952, in the early summer, the defendant withdrew $4,500 from their joint account. This withdrawal was considered by the parties in their negotiations for settlement. She kept the balance of the account, about $1,000. The plaintiff had a house in Melrose, Montana, which cost $900 and which was sold for $3,500. She kept that. The negotiations between the husband and wife seemed to be one of an accounting, settling their business matters. The conferences were apparently quite extended and covered all angles of property, including all bank accounts. Apparently nothing was omitted. After a complete canvass of the situation and in agreement upon the subject matter, they went together to a lawyer in Dillon, Montana, and instructed him to prepare a contract; also to draft a promissory note for plaintiff to execute to defendant a mortgage to secure payment of the same. The plaintiff also instructed the attorney to proceed with her divorce case. The attorney inquired if she knew fully what she was doing and she replied in the affirmative and directed him to go ahead.

Later that same day the parties signed the agreement, a copy of which was attached to the defendant's answer in this suit and was in evidence. She executed the note and mortgage and verified her complaint for divorce that same day. Her complaint for divorce did not seek nor mention any property settlement, alimony, nor attorney fees. The divorce action was not contested and later went to judgment; the judgment not mentioning property settlement, alimony, nor attorney fees. It did provide for restoration of plaintiff's former name. Following this time,

in the fall of 1952, the plaintiff paid the interest as provided in the note for a period of two years.

After two years the plaintiff refused to pay any further interest and insisted that the contract, note and mortgage were void. Finally, after a summary foreclosure was attempted by defendant, the instant action was commenced by plaintiff.

The complaint alleges in part that plaintiff "resolved to seek a divorce from defendant Fox because of faults * * *. That upon her advising defendant Fox of such resolution he stated he would contest any such divorce action unless said plaintiff * * * executed the * * * promissory note. That to facilitate the obtaining of said divorce, plaintiff did sign and deliver * * * [the note in question for $7,500]."

And further:

"That there was no consideration supporting said promissory note aforesaid other than the purported and intended consideration of bringing about and facilitating said divorce * * *. That while said note and mortgage appear on their faces to be valid and enforceable, in truth and in fact the same are entirely void and unenforceable at law."

The answer put in issue the material allegations of the complaint and pleads a counterclaim in which the defendant alleges the making of the note and mortgage and that he has elected to declare all of the debt due because of plaintiff's default. He seeks foreclosure of the mortgage. The reply put in issue the affirmative allegations of the answer.

The court's findings and judgment were in favor of the plaintiff. The defendant appeals.

The specifications of error can be divided into two parts. Those that deal with rulings on evidence, this being an equity case, will not be reviewed. With all the evidence before the court we shall consider the cause of action stated with the evidence which was introduced to support it.

First off, we should note that this is not a divorce action nor does either party make any attack on the divorce decree. Secondly, we note that it is not an action for rescission of a con-

tract. Thirdly, no fraud, duress or undue influence in the making of the contract is pleaded or proved.

What, then is the nature of the cause of action? Referring to part of the complaint heretofore quoted, which must have been the basis for the court's findings, the plea is simply that the note and mortgage are void because they were given for an illegal consideration, viz., solely to facilitate a divorce, or, in other words, collusively.

The district court found expressly that there was no consideration for the note other than the manner in which it facilitated the obtaining of the divorce. It found the note void as opposed to public policy and ordered the note and mortgage cancelled of record and that defendant take nothing by virtue of his counterclaim.

In entering upon a discussion of the court's findings, we are familiar with the rules that the findings of the trial court will not be disturbed on appeal, unless the evidence decidedly preponderates against them. Bell v. Bell, 133 Mont. 572, 328 Pac. (2d) 115; Williams v. Williams, 85 Mont. 446, 278 Pac. 1009. Also, if there are inconsistencies in the testimony, it is the trial court's office to resolve these inconsistencies, and where the evidence is fully considered and furnishes reasonable grounds for different conclusions the findings of the trial court will not be disturbed. Dalbey v. Equitable Life Assurance Soc. of United States, 105 Mont. 587, 74 Pac. (2d) 432; Orton v. Bender, 43 Mont. 263, 115 Pac. 406; Dalakow v. Geery, 132 Mont. 457, 318 Pac. (2d) 253. Also, this being an appeal in equity, we are required to review all questions of fact arising upon the evidence presented in the record and determine the same. R.C.M. 1947, sec. 93-216; Bond v. Birk, 126 Mont. 250, 247 Pac. (2d) 199; Bradbury v. Nagelhus, 132 Mont. 417, 319 Pac. (2d) 503.

Does the evidence presented support the findings of fact of the trial court?

First it is clear, from the plaintiff's own testimony and that of her admitted letter to the defendant prior to the discussions,

which led up to the note and mortgage, that: (1) she was going to get a divorce and considered she had grounds for a divorce; (2) that plaintiff and defendant were equal owners of Canyon Creek Camp properties; (3) that plaintiff felt she owed defendant money and wanted to settle all his "claims"; (4) that plaintiff was the moving party in the divorce; (5) that plaintiff was in possession of the premises, physically and legally, the permit being in her name; (6) that plaintiff, after oral agreement, went to her own attorney, carefully considered the whole matter, and had the papers drafted to her own satisfaction; (7) that she obtained the divorce, neglected to inform the court of any property settlement, and still wants the divorce; (8) that if any collusion were even suggested by plaintiff's testimony, it was not a fraud on the court, she still insisting she had grounds for divorce; (9) that there was a consideration for the note and mortgage which passed from defendant to plaintiff, viz., his admitted one-half equitable ownership of the personal property which largely constituted Canyon Creek Camp in exchange for a promise to pay under reasonable terms the amount of $7,500; (10) that the reasonable price of Canyon Creek Camp at the time was at least $15,000.

In spite of these clear facts from plaintiff's own case, the trial court found that "there was no consideration for said promissory note other than the manner in which it facilitated the plaintiff's obtaining a divorce from the defendant." Obviously, from the above facts there was a consideration other than "the manner in which it facilitated" the divorce. Plaintiff got what she asked, defendant's half interest for a reasonable price plus other inconsequential items, but at least a settlement of all of defendant's claims, the existence of which she vehemently and poignantly admitted. Respondent desires to review the whole matter as a property settlement in a divorce. Under the pleadings and the facts presented, our inquiry does not go to the propriety or equality of the agreement, but only as to whether there was consideration other than an illegal collusive agreement

solely to facilitate a divorce. Clearly there was and plaintiff's own testimony confirms it.

For that matter, neither do we feel that the record reveals any unfairness or injustice in the agreement at the time it was made. Subsequent events may have proven the business deal improvident under plaintiff's management, but at the time it was made it obviously was agreeable to plaintiff.

The plaintiff argues that the business deal was collusive in that the court in the divorce action, uncontested by defendant, granted plaintiff the divorce and must have believed defendant to be at fault. (Plaintiff still insists this to be the fact.) Then plaintiff argues that had the court been informed of the property settlement, it would not have approved because it would have been against public policy. To arrive at this argument the plaintiff repeatedly states that defendant received *all of the family assets*. This just simply is not the fact as the record reveals. Plaintiff received the business that she and defendant had slaved to build in five years. She must have received its income. Apparently from plaintiff's argument now it has been an unsuccessful business, but that is retrospect, and, the record does not reveal the income. At the time of the agreement, plaintiff got what she wanted at a price agreeable to her. She was the moving party in the divorce. She neglected to or refrained from informing the court. As referred to earlier, this is not a divorce action. No needs of plaintiff and no mention of her own resources is alleged or proven. The issue is simply whether she received *any consideration* for her note except the promise of appellant not to contest her divorce.

In R. M. Cobban Realty Co. v. Donlan, 51 Mont. 58, 66, 149 Pac. 484, 487, it is said: "Owners of property have the right to be foolish as well as wise, prodigal as well as provident; and, whichever they are, it is the business of the courts to enforce their contracts freely made and plainly expressed."

It is said in 17A Am. Jur., Divorce and Separation, sec. 890, p. 79, that, "Although agreements for alimony or other provisions for the future support or maintenance of the wife in-

tended or materially tending to facilitate the procurement of a divorce are against public policy, according to the weight of authority, bona fide agreements relating to alimony or the adjustment of property rights between the husband and wife, though in contemplation of a divorce, will be upheld if not directly conducive to the procurement of a divorce. The validity of such agreements depends on whether there is an attempt to obtain a divorce not justified by the real facts and thus to practice a fraud on the court. An agreement between the parties, not involving an imposition on the court or a suppression of facts, but intended merely to facilitate the proofs and smooth the asperities of the litigation, is valid.''

And in section 892 of that same work it is said ''that the test of the validity of the agreement is whether it is a device to facilitate a fraudulent divorce or whether it merely constitutes a fair and honest adjustment of matters in connection with a divorce which one of the parties is lawfully entitled to secure.''

In the instant case, there is no suggestion that the divorce was not justified by the real facts. Both parties recognize and testify that there were grounds for the divorce.

In Stebbins v. Morris, 19 Mont. 115, 122, 47 Pac. 642, 645, this court said:

''If, then, the agreement relied upon in this case was entered into between the parties in contemplation of and for the purpose of facilitating the divorce obtained by the wife, it should be held void, as collusive. *If, however, it can be established that it was entered into without any collusive intent, and as merely incidental to a decree of divorce obtained without collusion, the plaintiff's right to recover would assume a different aspect.''* Emphasis supplied.

The principle that an agreement which is not collusive for the purpose of bringing about or facilitating a divorce will be enforced was reiterated in Sherman v. Sherman, 65 Mont. 227, 211 Pac. 321. In Grush v. Grush, 90 Mont. 381, 3 Pac. (2d) 402, the test for determining collusion appeared to be whether a fraud was perpetrated on the court as to the grounds for the

divorce. In the Grush case, even though such collusion was found to have existed, the agreement thereby made was enforced as to the plaintiff husband who had inspired and promoted it, and then had attempted to avoid its burdens after the divorce had been granted. In Herrin v. Herrin, 103 Mont. 469, 63 Pac. (2d) 137, the court found an agreement void as facilitating a divorce, but nevertheless held the property settlement provisions to be separable and enforced them in order to do substantial justice between the parties. Apparently, collusive intent was established in the Herrin case.

The conclusion to be drawn from these cases is that any ██ agreement, the purpose of which is to facilitate the granting of a divorce without proper grounds existing, is void, but that where proper grounds do exist, an agreement with respect to a property settlement, when not brought about by duress or coercion, cannot be said to perpetrate a fraud upon the court and will not be held void.

See Annotation, 109 A.L.R. 830, 842, where it is said:

"The fact that there may be an agreement between the parties in contemplation of a divorce, or to facilitate the proceedings, does not necessarily mean that there is collusion; as, for example, agreements relating * * * to property rights * * *. However, the term 'collusion' was defined in Stewart v. Stewart, 1921, 93 N. J. Eq. 1, 114 A. 851, as including any agreement between the parties as result of which no defense is made to the dissolution of the marriage tie, *which would not otherwise be dissolved.*" Emphasis supplied.

All of the well-reasoned cases we have read look to the collusive intent, that is, as to whether the divorce was on proper grounds and as to whether the State's interest in the continuity of the marriage status or support of spouse and children, has been protected. In the instant case, none of these factors are shown to be present.

Returning now to the instant case, collusive intent was not established. The divorce is shown by the plaintiff to have been on proper legal grounds. It was not a fraudulent divorce:

There was other legal consideration for the note and mortgage.

We find then that the evidence decidedly preponderates against the trial court's findings. Whereby, the judgment of the court below is reversed, the note and mortgage are declared valid. Let proceedings be had accordingly.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE BOTTOMLY concur.

MR. JUSTICE ADAIR dissents.

MR. JUSTICE ANGSTMAN, (dissenting):

I think the district court was warranted in finding that the note and mortgage were given to facilitate the matter of obtaining a divorce and hence, were opposed to public policy and void.

Plaintiff testified that when she mentioned to her husband that she was going to procure a divorce he stated that he would resist it unless she agreed "to his terms of the property settlement."

Defendant told plaintiff, "he wouldn't prevent me [plaintiff] from getting a divorce if we made this property settlement and he got what he wanted."

I do not attach much importance to the fact that both parties went to an attorney to prepare the necessary papers. The attorney thought he represented both parties and refused to testify for plaintiff unless defendant waived any privilege that he might have and this his counsel refused to do. The general rule is stated in 17A Am. Jur., Divorce and Separation, sec. 888, p. 77, as follows: "* * * a property settlement or separation agreement which substantially facilitates or promotes a separation or divorce is contrary to public policy and is therefore void. Any provision for support contained in a contract or agreement between husband and wife which, by its terms or effect, is conducive to a relaxation or a severance of the marital ties is void as contrary to public policy and will not be upheld or maintained. Hence, an agreement to withdraw opposition to, or

not to contest, divorce proceedings cannot form a valid consideration for a contract, and the fact that the transfer of property is to be effected through a trustee in no way changes the illegal aspect of the transaction." This court has declared this to be the rule. Stebbins v. Morris, 19 Mont. 115, 47 Pac. 642; Sherman v. Sherman, 65 Mont. 227, 211 Pac. 321; Stefonick v. Stefonick, 118 Mont. 486, 167 Pac. (2d) 848, 164 A.L.R. 1211.

The point of difference between the parties turns upon the question whether the agreement is separable so that the agreement as to property rights may stand even though the divorce itself might fall as being contrary to public policy.

This court in Herrin v. Herrin, 103 Mont. 469, 63 Pac. (2d) 137, 139, which had to do with a contract entered into to facilitate a divorce said: "But we think it repugnant to sound principles of equity to permit one to profit by the provisions of such an agreement and then avoid its objectionable parts by invoking the rule mentioned, and we therefore hold the contract to be separable. * * * The contract is therefore held to have been entered into for the purpose of facilitating a divorce, and as to that it is void as contrary to public policy, but as to the property settlement it is valid and binding upon both parties."

The Herrin case overlooks section 13-504 of our statute which reads:

"If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void."

I think the correct view was stated in Beard v. Beard, 65 Cal. 354, 4 Pac. 229, 230, where an agreement such as the one here was under consideration. The court in that case said: "In this case the agreement of the defendant to abandon her defense in the divorce case, and to give the notes and mortgage, were parts of one and the same transaction, and constituted the consideration of the transfer of property by the plaintiff to her."

Where the agreement to execute the note and mortgage and the agreement not to resist the divorce form parts of one trans-

action both must fall. Beard v. Beard, supra; Stebbins v. Morris, supra.

In the Stebbins case, which was an action seeking to enforce such a contract this court said: ''It is a general and uniform rule that any agreement entered into between husband and wife with a view to facilitating the dissolution of their marriage contract is void.''

The court did not undertake to say that the agreement, so far as it affected property rights, could be enforced but that the part relating to the divorce should fall.

As above-noted, the court in Herrin v. Herrin held that the agreement as it affected property could stand irrespective of the fact that the provisions relating to the divorce were void. I think the holding in the Herrin case should be overruled. The agreement with reference to property was interwoven with the provision respecting the decree of divorce and one cannot stand without the other. I think it was inconsistent for the court to hold that the agreement was valid though the divorce was void and yet uphold both the agreement and the divorce.

The case of Grush v. Grush, 90 Mont. 381, 3 Pac. (2d) 402, condemned the right of a party to accept the part of the decree awarding the divorce and rejecting that part relating to alimony. The issue in the Grush case was whether a provision requiring the husband to pay alimony could be sustained when the decree showed that the divorce was granted because of an offense on the part of the wife. The husband contended it could not because of section 21-139. That issue is not in this case. Here there was no alimony provision in the decree. Also in that case the appeal was from an order refusing to modify the divorce decree by striking out a clause awarding alimony to the wife. The husband sought to stand on the decree so far as it awarded the divorce but to reject that part requiring him to pay alimony.

The case of Ryan v. Ryan, 111 Mont. 104, 106 Pac. (2d) 337, is also one where the husband was required to pay alimony in order to facilitate the granting of a divorce in his favor. That

case followed the Grush case and the opinion points out that the issue in the Grush case was whether a provision for alimony could stand when the decree named the wife as the offending party. A showing was made in both the Grush and Ryan cases that in truth and in fact the husband was the offending party, but that in reliance on the agreement with respect to alimony the wife did not oppose the action.

The only issue here is whether the wife may be compelled to give up her interest in the property acquired through the joint efforts and contributions of the parties because she executed a note and mortgage to facilitate the divorce granted in her favor. Here the husband is not paying alimony. Since the wife obtains no alimony it is of no consequence as to who may be determined to be the offending party.

Another reason for invalidating the agreement, here involved, is because it makes a grossly inadequate provision for the wife. Here the foreclosure of the mortgage will leave her stranded with no property rights whatsoever. Under the agreement she gave up all her property rights and her right to alimony.

The rule is that while it is competent for the husband and wife to enter into a property settlement agreement and for the wife to release her right to support, such agreements may be held void not only "where it is part of a collusive bargain for a divorce" but also where it "makes a grossly inadequate provision for the wife in lieu of support." 17A Am. Jur., Divorce and Separation, sec. 894, p. 82.

"When a husband and wife are living together as such, and they make a contract, they occupy a confidential relationship, or a relationship of trust and confidence, and it is generally assumed that the husband has a dominant influence over the wife, for which reason it is held that a contract, to be valid, must be fair and reasonable as to the wife." Id., sec. 898, p. 85.

And when the wife signs a contract prepared by the attorney for the husband it must be fair and reasonable or she may avoid it. Id., sec. 898, p. 85 and 86, note 3.

Here no provision was made for the payment of the wife's

support. The agreement made no provision for alimony, suit money, costs or attorney's fees. Under it the wife was the one giving up valuable property rights. If the mortgage be foreclosed she will have practically nothing.

Under the agreement the husband obtained the benefit of a note on Arizona property with a balance of $11,500 due; he received the benefit of the withdrawal of $4,500 from their joint bank account, a Columbia House Trailer worth about $3,000, a Mercury automobile worth about $2,500, a 1951 Ford Truck worth about $1,500, real property on the Colorado River worth $6,000, cash in banks amounting to about $900, and the note and mortgage in question here, and the wife obtained the divorce and the use of a pick-up truck until the fall of 1953 and the Melrose house. The agreement is grossly inequitable from her standpoint.

The Supreme Court of Ohio has ruled under facts very similar to those here that a note and mortgage given to facilitate the procuring of a divorce are without consideration and void. Stoutenberg v. Lybrand, 13 Ohio St. 228.

I think that both the agreement and the divorce should fall even though both parties are willing that the divorce should stand. This court has the authority to set aside the divorce sua sponte. Hall v. Hall, 70 Mont. 460, 226 Pac. 469, and see State ex rel. Sparrenberger v. District Court, 66 Mont. 496, 214 Pac. 85, 33 A.L.R. 464; Grush v. Grush, supra.

My associates place much reliance on a letter written by plaintiff to defendant. It is questionable whether this letter should have been admitted in evidence in its entirety. But, assuming that it was properly admitted it does not prove as much as my associates would indicate. It does not prove that she owed her husband any money but only that he claimed she did. It does not prove she went to her own attorney. The attorney as above-noted assumed to represent both parties. It is true she did not inform the court of the property settlement, but neither did he. There was more reason for him doing so than for her to do so, he was benefited by the agreement; she was not. He had a

motive for having it approved by the court, but she did not. She was releasing her dower or community interest in Arizona property—giving up her right to support money, costs and attorney's fee in the divorce action all without any consideration moving from him to her.

This being the first opportunity for the court to scrutinize the agreement in question here, it should not hesitate to set it aside where as here it is unfair and unjust. 27B C.J.S. Divorce, sec. 301(1), subd. c, particularly pp. 406 and 407.

I think the judgment should be affirmed, but as I said before I favor setting aside the divorce as well as the note and mortgage.